Cook vs. The Berlin Woolen Mill Co. and others.

---

Cook vs. The Berlin Woolen Mill Company and others.

*January 9 — January 30, 1883.*

*What purchaser may recover when sale set aside for constructive fraud.*

By a judgment setting aside a sale of the property of a corporation to its officers, on the ground of *constructive* fraud only (see 43 Wis., 433), the purchasers were allowed to recover the purchase money (including the amount of a debt due to one of the purchasers from the corporation at the time of the sale, and which was credited thereon), with interest from the date of the sale, and the taxes paid by them while in possession, with interest, but were

allowed nothing for such repairs as were necessary to the proper use of the property, or for insurance, and were charged with the annual rental value of the property (which was less than the annual interest on the purchase price) from the date of the sale until a receiver appointed by the court took possession of the property. Upon an appeal by a stockholder, at whose suit the sale was rescinded, *held*, that there was no error in such judgment.

APPEAL from the Circuit Court for *Green Lake* County.

The action was commenced in 1874. The report of a former appeal will be found in 43 Wis., 433. The cause having been remanded to the circuit court an order was entered adjudging the sale of the real estate and machinery of the *Berlin Woolen Mill Company* to the defendant *Harkness* to be fraudulent, null, and void, and declaring the sale by *Harkness* to the other defendants, and the conveyances executed by the president and secretary of the company on the 22d of May, 1874, to be null and void. By the same order a receiver of the property was appointed, and a reference was made for the purpose of ascertaining the value of the use of the mill and machinery, and the amounts paid by the defendants *Yates, Reese, Foote, Harkness*, and *Dodson* as purchase money and for taxes, insurance, repairs, etc.

Upon the report of the referee, the court found the following facts: That the defendants *Yates, Reese, Foote, Harkness*, and *Dodson* received the real estate and machinery of the *Berlin Woolen Mill Company*, in pursuance of the attempted purchase and sale, on May 22, 1874, and that said property was delivered by them to the receiver on May 29, 1879. That said defendants paid as purchase money for said property, the sum of $8,000. That the same was paid by the payment of a debt of $6,000 to E. M. Wadsworth and Hiram Joslyn, which the *Berlin Woolen Mill Company* was owing to them, and the payment of a debt of $2,000 which the company was owing to *D. L. Harkness*, which indebtedness and the whole thereof was assumed and paid as and for the purchase price of said mill and machinery, by agreement between the said

defendants and the company. That the said defendants paid for taxes on said property for the years 1874 to 1878, inclusive, the sum of $674.37; for insurance on the property while they occupied the same, the sum of $1,892.70; and for repairs the sum of $2,243.46. And that the rental value of the property from May 22, 1874, to May 29, 1879, was $500 per annum.

As conclusions of law the court found that the *Berlin Woolen Mill Company* was entitled to recover from the defendants *Yates, Reese, Foote, Harkness*, and *Dodson*, the sum of $500 per annum from May 22, 1874, to May 29, 1879, with interest to the date of the findings; that said defendants were entitled to be repaid by the company the sum paid by them for the mill and machinery, to wit, $8,000, with interest from May 22, 1874, and also the sums paid by them for taxes, with interest; that the plaintiff was entitled to judgment that the sale of the mill and machinery be set aside, and that the same be reconveyed to the company by said defendants upon payment by the company of the balance found due to them; and that the said defendants were entitled to judgment that the property stand as security for the payment of such balance to them.

From a judgment accordingly the plaintiff appealed.

For the appellant there was a brief by *Finches, Lynde & Miller*, and oral argument by *Mr. H. M. Finch*. They argued, among other things, that all moneys paid since the suit was commenced were voluntarily paid by the defendants and cannot be recovered. *Real Estate Savings Inst. v. Lincoln*, 74 Pa. St., 371; *Elston v. Chicago*, 40 Ill., 514; *Sheldon v. Harding*, 44 id., 68; *Watson v. Wilcox*, 39 Wis., 649; *Thompson v. Thompson*, 16 id., 94; *Puzey v. Senier*, 9 id., 377. A wrong-doer cannot lawfully expend money, after suit brought, and have the benefit of the expenditure. *Morrison v. Robinson*, 31 Pa. St., 457; *Shand v. Hanley*, 71 N. Y., 319; *Russell v. Blake*, 2 Pick., 506; *Railway Co. v. Soutter*, 13

Wall., 517; *Gregg v. Patterson,* 9 Watts & S., 197; *Waterman v. Dutton,* 6 Wis., 265; *Dart v. Hercules,* 57 Ill., 446; *Davidson v. Barclay,* 63 Pa. St., 413; *Gillespie v. Moon,* 2 Johns. Ch., 600; *Cannon v. Copeland,* 43 Ala., 252. The sale having been adjudged to be "fraudulent, null and void," the perpetrators of the fraud should not have been allowed anything. Bump on Fraud. Conv., 594; *Railway Co. v. Soutter,* 13 Wall., 517; *Thompson v. Bickford,* 19 Minn., 23.

*Geo. D. Waring,* as attorney, and *S. U. Pinney,* of counsel, for the respondents, cited: Kerr on Fraud, 345–351; *Davoue v. Fanning,* 2 Johns. Ch., 252; Lewin on Trusts, 444; *Hawley v. Cramer,* 4 Cow., 717; *Van Epps v. Van Epps,* 9 Paige, 237; *Jewett v. Miller,* 10 N. Y., 406; *Slade v. Van Vechten,* 11 Paige, 21; *Tiffany v. Clark,* 58 N. Y., 632; *Mookerjee v. Mookerjee,* 11 Eng. R., 103; *In re Imperial Land Co.,* 20 id., 762; *Howell v. Baker,* 4 Johns. Ch., 118; *Rogers v. Rogers,* Hopk., 515; *Van Horne v. Fonda,* 5 Johns. Ch., 388; *Walton v. Torrey,* Harrington Ch., 259; *Miles v. Wheeler,* 43 Ill., 123; *Kruse v. Steffens,* 47 id., 112; *Stoner v. Weiser,* 24 Iowa, 434; *Colburn v. Morton,* 1 Abb. App., 378; *Yeackel v. Litchfield,* 13 Allen, 417; *Herschfeldt v. George,* 6 Mich., 456; *Potter v. Gracie,* 58 Ala., 303; *King v. Wilcox,* 11 Paige, 589; *Blodgett v. Hitt,* 29 Wis., 169; *First Nat. Bank v. Bertschy,* 52 id., 455; *Mohr v. Tulip,* 40 id., 66; *Gillet v. Gillet,* 9 id., 194; *Wickiser v. Cook,* 85 Ill., 68; *Picket v. School District,* 25 Wis., 557; *In re Taylor Orphan Asylum,* 36 id., 537; *Boerum v. Schenck,* 41 N. Y., 183; *Reed v. Warner,* 5 Paige, 650; *Dutton v. Willner,* 52 N. Y., 315; *Fulton v. Whitney,* 66 id., 548; 1 Washb. on R. P., 456; Leading Cases in Equity, 157, 168.

COLE, C. J.   In the judgment appealed from, the purchasers are allowed to recover $8,000, the purchase money for the mill and machinery, with interest on that sum from the day of purchase; also to recover the taxes paid on the prop-

erty for the years 1874, 1875, 1876, 1877, and 1878, and interest on such taxes from the time of payment. They were not allowed to recover anything for repairs rendered necessary for the proper use of the mill and machinery, nor for insurance. They were charged with the rental value of the mill and machinery from the date of purchase to the time the receiver took possession at the rate of $500 per year. The amount found due the purchasers on this basis at the date of the judgment was made a lien upon the property, and the property was ordered to be sold if such amount was not paid within ninety days.

This judgment is vigorously attacked by the learned counsel for the plaintiff as being unjust and inequitable to his client and other stockholders of the corporation. He insists that the vendees were guilty of an actual, positive fraud in making the purchase; consequently if entitled to recover anything it should only be the amount of the mortgage on the property when they purchased. It seems to us quite idle and unnecessary to inquire what the proper rule of indemnity would be were the sale vitiated by the presence of actual fraud. That is not this case. On the contrary, Chief Justice RYAN, at the close of his opinion on the former appeal, uses this language: "Nothing said is intended to impute positive fraud to the respondents. Except so far as the reserve of the superintendent may possibly be so regarded, no positive fraud is imputed by any of the evidence to any of the respondents. Like the decree in *Parker v. McKenna* [L. R., 10 Ch. App., 96], the judgment in this case is rested on the doctrine of constructive fraud only; reluctantly applied under the circumstances." 43 Wis., 448. The sale was set aside in obedience to the settled rule in this state that trustees cannot purchase on their own account any interest in the property of their *cestui que trust*. Much stress is laid by plaintiff's counsel on the clause of the order of the circuit court which adjudges the sale to be "*fraudulent, null,*

*and void.*" This order was entered pursuant to the directions of this court and its language should be construed with reference to our decision.   This court set aside the sale, not because there was any actual fraud in the transaction, but for the reason that officers of the corporation were prohibited from becoming purchasers of the property of their principal. This rule was held applicable to the superintendent as well as the directors of the corporation; a rule which inflexibly forbids one holding a fiduciary relation from dealing on behalf of the *cestui que trust* with himself, where personal interest and duty conflict, and where constructive fraud is imputed to the transaction, however fair and innocent in fact it may be.   That was the ground on which the sale was rescinded, as a reading of the masterly opinion of the chief justice will show.

The question, then, is, On what terms is the sale rescinded, where there is only constructive, but no active or positive fraud in the transaction?   We suppose that the purchaser, at least, is allowed to recover the actual compensation paid, with interest thereon.   Some of the cases go much beyond this in the measure of reimbursement.   Lewin says that in such a case " the trustee will have all just allowances made to him for *improvements and repairs*, which are substantial and lasting, or such as have a tendency to bring the estate to a better sale, as in one case for a mansion house erected, plantations of shrubs, etc.; and in estimating the improvements, the buildings pulled down, if they were incapable of repair, will be valued as old materials, but otherwise they will be valued as buildings standing.   Should the property have been *deteriorated* by the acts of the trustee, his purchase money will suffer a proportionate reduction."   Lewin on Trusts, 444.   Where the *cestui que trust* objects to the purchase, it is a common practice for the court to order a resale of the property at a fixed price, which is called the *upset price*, which includes the purchase money paid, and interest,

with costs of all the substantial and permanent improvements made by the purchaser, charging him with the profits or the fair annual rent of the property. That was the decree in *Davoue v. Fanning*, 2 Johns. Ch., 252, where that great equity judge, Chancellor KENT, discusses the doctrine of purchases by persons standing in the relation of actual trustees for the sale in a most elaborate and able opinion. Sometimes the court orders the sale to be set aside entirely, and the purchase money refunded. As bearing on this question see *Mason v. Martin*, 4 Md., 124; *Spindler v. Atkinson*, 3 Md., 409; *Scott v. Freeland*, 7 Sm. & Mar., 409; *Buckles v. Lafferty's Legatees*, 2 Rob. (Va.), 294; *Bailey's Adm'r v. Robinson*, 1 Gratt., 4; *Mulford v. Minch*, 3 Stockt., 16; *Britton v. Johnson*, 2 Hill (S. C.) Ch., 430, 436, note; *Imboden v. Hunter*, 23 Ark., 622; *King v. Wilcox*, 11 Paige, 589; *Drury v. Cross*, 7 Wall., 299; *Murray v. Palmer*, 2 Schoales & L., 474.

The purchasers were not allowed anything for repairs, probably because the court below considered that the repairs made were only such as were necessary for the proper use of the mill and machinery, but added nothing of permanent value to the property. However that may be, it seems to us that every principle of justice and equity requires a repayment of the actual consideration money and interest thereon. Repayment to the extent of the $6,000 mortgage which was on the property at the time of sale, and which the defendants assumed, is not seriously resisted. But in the $8,000 purchase money was included $2,000, which was a debt owing by the corporation to the defendant *Harkness*. As to this amount, it is said, the property should not stand as indemnity for its repayment, but on setting aside the sale *Mr. Harkness* should be placed on the same ground as any other general creditor. It does not lie in the mouth of the plaintiff to object because the corporation paid its debt to *Harkness* in the way it did. Certainly, if

the corporation had paid him his money, and he had immediately returned it as a part of the consideration of the purchase, no question could arise as to his right to have it refunded on the sale being rescinded. But the arrangement which was made for the payment of the debt amounted to substantially the same thing. We assume, as we must do on the record, that the debt was a just one against the corporation. And this being the case, we see no good reason for making the distinction between this $2,000 and the rest of the purchase money.

The court allowed the defendants the taxes which they paid while in possession, and interest on the respective payments from the time they were made. This part of the judgment is also objected to on various grounds. We think the objections are untenable. These taxes were assessed against the property, and it was the clearest, plainest duty of the defendants, under the circumstances, to pay them and save the estate. We are unable to see any force in the suggestion that the taxes and interest thereon cannot be recovered because they were voluntarily paid. It is certainly true, if the taxes had not been paid the property would have been sold. Had that taken place, the plaintiff would have had most valid grounds to complain of breach of duty on the part of defendants in the matter. The payment of the taxes was absolutely essential to preserve the property and retain the title. The taxes were assessed upon this identical property; they were liens upon it; and the property would have been lost to the owners had they not been paid. For such expenditures the defendants surely were entitled to the compensation which the court allowed.

There is a further specific objection taken to the judgment which requires brief notice. The defendants went into possession under their purchase May 22, 1874. The receiver appointed by the court took possession May 29, 1879.

The defendants were charged during this time an annual rent of $500. It is said that the account was stated on a wrong basis for this period; that the rent should have been applied each year to the payment of interest due; or, if the rent was not so applied, then annual interest should be computed on the annual rent of $500. The interest on the purchase money was not compounded in the accounting. It exceeded each year the annual rent. Had the accruing interest on the purchase money been less than the rent, then the principle on which the account was stated would be wrong. But as such interest exceeded the rent it is apparent no injustice was done in the accounting. If the rent had been applied to the payment of interest at the end of each year, it would not have paid such interest. The yearly interest due would have been more than sufficient to exhaust the rent annually. Where the annual rent exceeds the annual interest, then the rule contended for by plaintiff's counsel would be the correct one. *Green v. Wescott*, 13 Wis., 607; *Gladding v. Warner*, 36 Vt., 54; *Blum v. Mitchell*, 59 Ala., 535.

Considerable was said on the argument about the financial standing of the corporation as disclosed by the pleadings, its ability to pay its debts when the sale was made, and as to what disposition had been made of its assets. A discussion of these questions is not germane to this appeal. Whether or not the corporation was solvent when it made the sale, may have a bearing on the *bona fides* of that transaction. But the question whether there was active, positive fraud in the sale is not an open one. These pleadings were before the court on the former appeal, and upon the record as it then stood, which included the evidence, the judgment was expressly " rested on the doctrine of constructive fraud only; reluctantly applied, under the circumstances." The defendants surely cannot be called upon to

account for the assets of the corporation which have not come into their hands.

We think the judgment of the circuit court is correct and must be affirmed.

*By the Court.*— Judgment affirmed.