BACOT *v.* HOLLOWAY.*

(Division B. June 8, 1925. Suggestion of Error Overruled July 2, 1925.)

[104 So. 696. No. 23441.]

1. APPEAL AND ERROR. *Chancellor's finding on conflicting evidence not disturbed.*

    The issues of fact being controverted, either directly or by circumstances, the findings thereon of the chancellor, who heard and observed the witnesses, will not be disturbed.

2. QUIETING TITLE. *Decree should provide for sale, if party decreed to repay taxes does not do so.*

 Decree quieting title in defendant, but providing that she pay complainant a certain sum disbursed by him for taxes, and decreeing lien therefor, should provide for sale by a commissioner for payment thereof, if defendant does pay it in a reasonable time.

 *Headnotes 1. Appeal and Error, 4 C. J., Section 3311; 2. Costs, 15 C. J., Sections 411, 424, 426; 3. Appeal and Error, 4 C. J., Section 3311; Costs, 15 C. J., Section 422.

APPEAL from chancery court of Quitman county.
HON. G. E. WILLIAMS, Chancellor.

Suit by W. C. Bacot against Mrs. A. E. Holloway and another. From a decree quieting title in the named defendant, but providing that she pay a certain sum to complainant, complainant and said defendant appeal by direct and cross appeal. Affirmed in part, and reversed and remanded in part.

*M. E. Denton,* for appellant.

Appellant was a purchaser for a valuable consideration without notice of any claim by appellees, and there is nothing in the record to even hint that there was anything on the land records or other records of Quitman county, showing that appellee had any title or claim whatever to the land, and therefore, W. C. Bacot became the owner as against appellee and the whole world, under our statutes requiring instruments to be recorded, even though she or others may have had an unrecorded instrument showing good title in her or them, unless appellant had actual knowledge of such instrument or committed actual fraud in recording his deed first; and nothing of the sort is shown by the testimony. Hemingway's Code, section 2288, Code of 1906, section 2784.

A purchaser of the fee will take the title though another actually has a prior executory contract for the

purchase of the same land; and the first to receive the deed gets it for value without notice of the prior contract. 27 R. C. L. 562, Note 10; *Haggan* v. *Woods Heirs,* 2 Ky. (Ky. Dec.) 273; *Hardin's Executor* v. *Harrington,* 74 Ky. (11 Bush.) 367; *Martin* v. *Thomas,* 49 S. E. 118, 56 W. Va. 220; *Combs* v. *Hall,* 60 S. W. 647, 22 Ky. Law Rep. 1418; *Fowles* v. *Bentley,* 115 S. W. 1090, 135 Mo. App. 417; *Marble Co.* v. *Mead,* 80 A. 852, 85 Vt. 20.

In such a case our court has held that a purchaser under such circumstances takes the title, although the agent of the vendor told him that other persons had been negotiating for the land but the negotiations had been dropped. *Curtis* v. *Blair,* 26 Miss. 309, cited in: 27 R. C. L. 562, Notes 10 and 11; *Frank* v. *Stratford-Hancock,* 67 L. R. A. 571.

Every contractual or express trust, especially trusts for the holding of land for another must be evidenced by writing, acknowledged and recorded, and such contract or agreement, only takes effect from the time it is "lodged for record." The alleged agreement under the appellee's claim that William Bacot or W. Bacot afterward, W. C. Bacot, consented that Mrs. Bacot, now Mrs. Holloway, might use his name in buying land for her, whether it was written or oral, because such agreement was never recorded, has never taken effect as against appellant who had no notice of their claims. Hemingway's Code, section 3124; Code of 1906, section 4780.

Appellees made no proof whatever that they had any possession of the executory contract. We think the testimony shows clearly that appellees never had possession of it, claiming it as their own, but that we have made indisputable proof that it was in the hands of appellant continuously since it was delivered to him by his brother, J. R. Bacot, early in 1901. Certainly it was necessary for them to make very strong proof of possession of the contract. *Stovall* v. *Judah,* 74 Miss. 747, opinion 752; *Selph* v. *Purvis,* 49 So. 289, 57 Fla. 188; 2 Chamberlayne Modern Law of Evidence, sec. 1010;

*Lucas* v. *Hensley,* L. R. A. 1918 B, 875, opinion 876, Note 879.

Wherever the attention of the courts has been called to the exact question, they have held uniformly that the proof of possession of a lost instrument must be made by evidence so strong, clear, convincing and satisfactory as to require the proof to come almost beyond a reasonable doubt. L. R. A. 1918 B, 875, opinion 876, Annotation 879; *Lloyd* v. *Simmons,* 105 N. W. 902, 97 Minn. 315; *Peters* v. *Worth,* 164 Mo. 431, 64 S. W. 409; *Johnson* v. *McKaney* (Tenn.), 53 S. W. 229.

If Mrs. Bacot ever had a contract, she abandoned it by allowing J. J. Dickey and Abels and Barclay and their sub-tenants to make contracts with W. C. Bacot, signed by them and by him alone, by allowing W. C. Bacot to pay all taxes and the amount owing to the railroad company under their executory contract, and the railroad, after such abandonment, had a right to deed the land to W. C. Bacot or anyone else. *Native Lumber Co.* v. *Elmer,* 117 Miss. 720, opinion 733, and citations. Abandonment in such cases need not be in writing. 19 L. R. A. (N. S.) 881, Note.

Where one who holds title under bond for title and has paid part of the purchase money agrees orally that a third party may pay the balance and receive the deed, when this balance is paid by and delivery made to the *third party,* it is binding on all parties. *Samuel Aird et al.* v. *Alexander,* 72 Miss. 358. Giving the testimony of Mrs. Bacot its utmost consideration, she never, under any circumstances, acquired the right in any way to use the name of William Bacot, and she does not claim to have done so. According to her statement, which is against the overwhelming testimony of other witnesses who were present, she might have had the right to use the name of W. Bacot & Co., but the record does not reveal any possible claim to this land as acquired through W. Bacot & Co. If it was meant that W. Bacot & Co., or William Bacot should be used, then the evidence of such

intent should have been recorded as required by our statute; otherwise, it was, and is, a nullity. The lower court erred at least in not allowing appellant the money spent in good faith by him on the land for improvements and in making payments to the railroad company for the purchase price.

*Clayton D. Potter,* also, for appellant.

From her cross-bill, and from her own evidence, it is certain that Mrs. Bacot, when she testified that she made the payments on the land in question, was testifying to a conclusion which is in no wise borne out by the record. The cross-bill, excerpts from which have been quoted before, and her own evidence shows that she did not have personal knowledge or claim personal knowledge, as to the payments; and if she did, or intended to, in the face of the documentary evidence produced by the railroad company, and the other overwhelming proof in the record, her mere assertion without dates, figures or receipts could not be taken as true. If, on the evidence in this record, the Chancellor intended to find that Mrs. Bacot made the payments subsequent to 1901 to the railroad company, such finding would be manifestly contrary to the established proof in the case. *Hardy* v. *Masonic Benefit Assn.,* 103 Miss. 108, 60 So. 48; *Fore* v. *A. & V. R. R. Co.* 87 Miss. 211, 39 So. 493; *So. R. R. Co.* v. *Elder,* 118 Miss. 856.

Under the evidence in this case, where an agent had such general authority as J. R. Bacot had, he would have been authorized to have made a deed to the property in question, had the title actually been in Mrs. A. E. Bacot, for her cross-bill shows that he attended to all of the deeds and matters of that kind, was her attorney in fact, and had authority to sign her name, and under the law such authority could be verbal and not written, in so far as to prevent cross-complainant from obtaining any

affirmative relief.     *Lobdell* v. *Mason,* 71. Miss. 937, 15 So. 44.

But in the case at bar, it was J. R. Bacot who had the physical possession of the contract up until the time of the transfer to W. C. Bacot; it was J. R. Bacot who, because of his debts, was disqualified to do business in his own name, and sought the permission of his father to do business in the name of W. Bacot and Company; it was to J. R. Bacot that this permission was given by Dr. William Bacot; it was largely J. R. Bacot's means, if not solely his means, obtained from his father and saved from his former bankrupt ventures, upon which the business in Clarksdale was started, and from which business the initial payments, amounting to about three hundred forty-two dollars were made to the railroad company; it was J. R. Bacot with whom the railroad company always dealt; it was J. R. Bacot who made all of the contracts with reference to the land; and J. R. Bacot was, at all events, up to the time of his death the general agent, manager and attorney in fact for Mrs. Bacot, and in writing he acknowledged that he had received, while so acting, the full purchase price of the property in question and had directed the railroad company to make a deed to the property in question. His recitals in his letter to the railroad company are not contradicted by any witness or circumstance in the case. Therefore, we most respectfully submit that just as certain as the railroad company did convey the legal title to W. C. Bacot by their warranty deed made at the request of J. R. Bacot, just so certain did the railroad company also convey to W. C. Bacot the equitable title to such property. We respectfully submit that the evidence in this case shows plainly that J. R. Bacot, in whatever capacity he acted, either as owner, partner, or accredited agent of Mrs. Bacot, received the consideration and caused to be made by the railroad company, the owner, a warranty deed to W. C. Bacot to the property in controversy.

We most respectfully submit that the decree of the Chancellor in this case is wholly without evidence to sustain it; that, on the other hand, the positive uncontradicted evidence, the established proof in the case, shows that the legal and equitable owner of the property in question is W. C. Bacot, and that for years he has been deprived of his rights in the premises.

*Cutrer & Smith,* for appellee.

J. R. Bacot did not occupy the land for W. C. Bacot, or do anything else which would bind Mrs. Bacot as the agent of W. C. Bacot, or otherwise. J. R. Bacot could not, under the law, admit Mrs. Bacot out of her property, which she had acquired by purchase. *Cameron* v. *Lewis,* 59 Miss. 134. This court should take with caution any admission thereof—so often misunderstood. *Hope* v. *Evans,* S. & M., chap. 195; *Campbell* v. *Henry,* 45 Miss. 326.

There are no admissions of Mrs. Bacot shown. She never conferred with W. C. Bacot, or any of the Bacots, in regard to the land. There was no occasion to do so, nor is it contended that she did. Whenever it appears that an admission is given, with the apparent motive of concealing the truth, it should be given little, if any, consideration by the court. *Parker* v. *McNeill,* 12 S. & M. 355. The fact of Mrs. Bacot's ownership and continued possession is conclusively shown from the record. If we were to assume that J. R. Bacot was making any such statements to appellant, or other witnesses, certainly he had no authority to do so, and was not acting in the scope of his authority, and they are not binding on him. He was never on any business for Mrs. Bacot, or W. Bacot & Company, when in Osyka. Furthermore, if he wrote any letters, or fraudulently or otherwise attempted to dispose of Mrs. Bacot's property, he manifestly had no authority to do so, and anyone who deals with him does so at their peril. *McLemore* v. *Hawkins,*

46 Miss. 715; *Dozier* v. *Freeman,* 47 Miss. 647; *Everman* v. *Herndon,* 71 Miss. 823, 15 So. 135.

It is the duty of the person contracting with an agent, to assure himself of the agent's authority to bind his principal, and it is not incumbent on the principal to seek out the contracting party and make known to him the extent of his representative's agency. *Malone* v. *Robinson,* 12 So. 709. It is also a well-established rule, if an agent has no power to sell, he cannot make an admission of a sale to bind the principal, for an agent's acts are only binding on the principal when made within the scope of his authority during the existence of the agency. *Skipworth* v. *Robinson,* 24 Miss. 688. It is certainly true and well settled that an agent cannot bind his principal by a transaction effected without the principal's knowledge, particularly when the subject-matter of the transaction is sufficient in itself to place the other contracting party on notice. *Dorrah* v. *Hill,* 73 Miss. 787, 19 So. 961, 32 L. R. A. 631; *Clarke* v. *Edwards,* 44 Miss. 778.

Even if Mrs. Bacot had made the statement in writing, or otherwise, that W. Bacot was a partner of hers, and, therefore, had an interest, it is not binding on her, and she is not precluded from proving the facts. Admissions apparently against interest should not be taken as conclusive against any party when, as a rule, it is a mere expression of an opinion, and the truth is never thereby precluded. *Sturn* v. *Baker,* 150 U. S. 312-313, 37 L. Ed. 1101.

Assuming all the facts asserted by appellant to be true, except the fact that J. R. Bacot was in possession of the land for W. C. Bacot, as his agent, and thereby constituting a constructive possession of the land by him, Mrs. Bacot was entitled to a decree, and the learned lower court should be affirmed.

The bill in this case was filed on April 7, 1908, more than ten years after she went into possession as owner, claiming it as such. Her title thereto, therefore, besides every other contention in the case, is indisputable and

superior to the claims of appellant. Sections 2454, 2455, 2458, Hemingway's Code. Title by adverse possession is available to the holder for all purposes whatever, and is a perfect title. *Scottish, etc., Mfg. Co.* v. *Butler,* 99 Miss. 56, 54 So. 666; *Ellis* v. *Murray,* 28 Miss. 129; *Ford* v. *Williams,* 35 Miss. 490; *Davis* v. *Rowmer,* 55 Miss. 671; *Davis* v. *Davis,* 68 Miss. 478, 10 So. 78.

Cultivation of a part of a tract and acts of ownership over the remaining uncultivated portion, without hindrance for ten years, gives title to all. *Gathings* v. *Miller,* 76 Miss. 651, 24 So. 964. The payment of some of the taxes on the land by appellant, will not defeat appellee's title because the payment of taxes is only evidence of a claim of ownership. *Leavenworth* v. *Reeves,* 106 Miss. 722, 64 So. 660.

If we were to assume, for the sake of argument, that appellant did pay certain of the payments on this land, nevertheless, that would not give him any rights to the land itself, but only if paid in good faith, and for his own protection, he would be entitled to indemnity. On the other hand, if he were a mere volunteer, he has no right to the said alleged payments against appellee. 39 Cyc. 1220; 90 N. W. 850; 58 N. W. 991; *Wheeler et al.* v. *Biggs et al.* (Miss.), 15 So. 118; *Connor* v. *A. W. Tippett et al.,* 57 Miss. 594; *Carr* v. *Frye et al.* (Mass.), 114 N. E. 745.

Appellant is not in a position to ask the assistance of equity to assist him in perfecting his alleged title. He admittedly claims under a contract which was altered and changed in its most material feature—a contracting party thereto. Likewise, admittedly, the deed was procured from the railroad company through the positive fraudulent, false statements and representations of J. R. Bacot, whom W. C. Bacot says was his agent in the transaction. Appellant is attempting to invoke the aid of equity to secure to him the fruits of the transaction consummated through his frauds and false statements, and the false representations of his agent, J. R. Bacot,

in securing the deed under which appellant claims. "He who comes into equity must do so with clean hands."

We most earnestly submit to this honorable court that the testimony in this case conclusively establishes no right to which equity will give relief in appellant, but, on the contrary, all of the testimony points conclusively to the indisputable right and title of appellee in the one hundred and sixty acres of land in controversy. In conformity with the long-established rules of this court, wherever a finding of fact has been made by the chancellor, his finding will not be disturbed or molested unless he was manifestly in error. We submit that in this case there is no manifestation from any testimony, or any part of the record, of an error on the part of the learned lower court, but that in all respects, he should be affirmed. *Meek* v. *Humphreys Co.* (Miss.), 97 So. 674; *Starnes* v. *Nation* (Miss.), 97 So. 881.

McGowen, J., delivered the opinion of the court.

The complainant, W. C. Bacot, alleged in his bill: That he was the owner of, and had a perfect fee-simple title to one hundred sixty acres of land situated in Quitman county, Miss. He deraigned his title beginning with a patent from the United States government, sets out a perfect chain of title from the United States government through mesne conveyances to him; his immediate grantor being the Yazoo & Mississippi Valley Railroad Company, by virtue of a written contract entered into before that time between the complainant and the said railroad company. Said contract was executed in 1898, and that after the written contract complainant took peaceable possession of the then wild and uncultivated lands, and put same into cultivation by clearing, etc. The bill contains further allegations that in April, 1904, the land having been put in a state of cultivation, he leased the same to one J. J. Dickey for a period of five years, 1904 to 1908, inclusive, evidenced by J. J. Dickey's rent notes,

140 Miss.—9.

Dickey sublet to W. S. Abels, and the complainant charges that Dickey and Abels went into possession of the land as his tenants, and have cultivated the land since as his tenants, but that they conspired together with the defendants to assist defendants in casting a cloud on the good title of the complainant; that said tenants wrongfully and unlawfully attempted to attorn to defendants, and refused to pay rent to complainant, attempted to deny complainant's title, and have paid rents to the defendants.

The bill further charges that the defendant, J. W. Cutrer, without any ground or right, brought an ejectment suit against Abels in the year 1907; that complainant at that time was a citizen of Pike county, Miss., but was not made a defendant in the ejectment suit, as it was desired that he should not know anything about the pendency of said suit; that judgment was taken by consent of Abels in favor of Cutrer by default; that, had he been made a party to the suit, he could have produced proof which would have prevented a judgment; and that the whole ejectment suit was an effort by strategy to obtain possession of the land.

The bill further alleges that the record discloses no title or right or claim in the defendants in said lands, and that their claim of title, the nature and character thereof, was entirely unknown to complainant; that any claim they might have was null and void; and prayed that whatever title they might assert might be canceled as a cloud, doubt, and suspicion on complainant's title for possession, for a cancellation of any claim, and for quieting the title.

Mrs. Goss, née Holloway, filed her answer, denied all of the material allegations of the original bill, filed a cross-bill against the complainant, W. C. Bacot, in which she alleged that W. C. Bacot is the brother of her late husband, J. R. Bacot, and that Bacot resided in the southern part of the state; that W. C. Bacot, the complainant, had never resided in Quitman or Coahoma counties

—never had any abode in either of said counties; that J. R. Bacot, having become insolvent, was unable to do business or own property in his own name.

She further alleged that by her industry and economy she acquired means, and removed with her husband, J. R. Bacot, to the city of Clarksdale, Coahoma county, to engage in a mercantile business for herself; that before so doing she secured from the father of her late husband, the late William Bacot, authority to transact business under the firm name and style of W. Bacot & Co.; and that, in pursuance of said agreement, she engaged in a general mercantile business in Clarksdale, Miss., under the firm name of W. Bacot & Co.

She claimed that all of the assets of this business became and were her separate property, and that this fact was known to the complainant and to the children of William Bacot; that while this business was being so conducted William Bacot died intestate, leaving as his heirs at law certain children, of whom the complainant was one; that after his death the heirs, including the complainant herein, executed to her a written transfer of their interest in said business and authorized her to continue to own and operate said business under said firm name of W. Bacot & Co.; that later in 1903, W. Bacot & Co. became insolvent, and proper proceedings were had culminating in the adjudication that W. Bacot & Co. was insolvent, and that she was thereafter discharged as a bankrupt and released from the indebtedness so contracted; that before her discharge as a bankrupt she, in contemplation of becoming the purchaser from the trustee of the assets and property of the firm of W. Bacot & Co., secured permission from W. C. Bacot, complainant herein, to use his name in the purchase of same; and that, in pursuance of said agreement, she did purchase said property in complainant's name and paid the purchase price therefor and took a bill of sale, transfer, and deed therefor in the name of W. C. Bacot, and that neither then nor after did the complainant ever have any inter-

est in any of the said property. She alleged that subsequently she continued the conduct of the business and held all of her property in the name of the complainant.

She further alleged that a part of the property owned by her was the land in controversy, and that the lands were bought for her by her late husband, J. R. Bacot, while acting as her agent, causing the title to be taken in the name of the complainant; that the cross-complainant relied on and had the utmost confidence in her husband, did not doubt or question his fidelity to her interests, and that he acted in connection with the business as her agent, and that all of the money paid by her husband to the railroad company was her money.

She further alleged that she took possession immediately upon the execution of the agreement to purchase, March, 1898, and made all improvements and paid all taxes. She further charged that, if complainant had any kind of title, he held such title for her benefit and that he should be divested of same and same vested in her, to the end that she be seized and possessed of perfect title in the land.

She further alleged that J. R. Bacot died in 1907, leaving her as his sole heir at law who was then his wife, there being no children; that at his death she became the owner of all the property owned by her husband in his lifetime. She alleged that any payments made for said lands were on her behalf and for her benefit, and that in so doing her husband was her agent.

She alleged that she immediately entered upon said land, and had been in the open, notorious, uninterrupted, adverse possession of the lands for more than ten years, and for that reason was entitled to have the title thereto confirmed as against the complainant; and prayed that the title to the property be quieted and confirmed in her, and that the cross-defendant's title be canceled as a cloud upon her title.

The defendant J. W. Cutrer adopted the above answer.

W. C. Bacot filed his answer thereto, denying the material allegations of said crossbill.

The bill in this case was filed on April 7, 1908, and the decree of the court below is dated April 11, 1921, and has but recently been submitted to this court for decision. Both the complainant and the defendant appeal here by direct and cross appeal.

Having stated the issues presented by the pleadings, we will content ourselves by saying that this is a voluminous record. Many objections were made to the testimony on both sides, which are not of sufficient importance to deserve special mention, as we find no reversible error in the ruling of the court below.

The chancellor decreed that the title to the land should be quieted and confirmed in Mrs. Bacot, the defendant, and that she should pay certain taxes which had been paid by the complainant, the amount of which, and each item and the interest thereon, is set out in the decree of the court below.

The issue of facts presented by these pleadings was controverted on all material points, either directly or by circumstances, and, the chancellor having heard the witnesses and observed their demeanor on the witness stand, we do not feel warranted in disturbing his findings on the main issue.

However, the decree in this case provided that Mrs. Bacot pay to the complainant the sum of one thousand seven hundred forty-four dollars and forty-nine cents, and provided that no deed should be executed in favor of Mrs. Bacot, the defendant, until she had paid the above sum, and decreed that a lien on the said land existed until said sum was paid or tendered.

It will be noted from this statement that no provision is made for a sale of the land if Mrs. Bacot should see fit to remain in possession of the land and not make the payment without additional litigation. We think this was error. We think the decree should have provided that a commissioner of the court be appointed to adver-

tise and sell said land within a reasonable time allowed
to defendant to pay the said sum, said sale to be con-
ducted as other chancery court sales; and for the pur-
pose of extinguishing the lien decreed by the court, and
to the end that the court below may appoint a commission-
er to advertise and sell said land in the event the defend-
ant shall not promptly pay to complainant said judgment
and interest, this case is reversed, and for that purpose
only, and for said purpose the case is remanded to be pro-
ceeded with in accordance with this opinion. In all other
respects the decree of the court below is affirmed.

*Affirmed in part; reversed in part.*

On motion to retax costs. Motion dismissed.

For former opinion, see 104 So. 696, and above.

[105 So. —. 739.]

1. APPEAL AND ERROR. *Motion to change award of costs must be filed
   in time allowed for filing suggestion of error by supreme court
   rules.*
   A motion to amend a judgment of the supreme court so as to
   change the award of court costs therein made is a suggestion of
   error, and must be filed within the time allowed therefor by
   rule No. 14 of the supreme court.

2. COSTS. *Award of court costs distinguished from taxation.*
   An award of court costs is an act of the court, but the taxation
   thereof is a ministerial act, to be performed by the clerk after
   the termination of the case. Section 969, Code of 1906 (section
   678, Hemingway's Code).

3. COSTS. *Statute held not to authorize amendment after adjourn-
   ment of court of award of costs.*
   Section 968, Code of 1906 (section 677, Hemingway's Code), which
   provides for the correction of an erroneous taxation of costs,
   applies only to the taxation of costs by the clerk of the court
   which rendered the judgment, and does not authorize an amend-
   ment after the adjournment of the court of an award of costs
   made in a judgment rendered during the term.

*Headnotes 1. Appeal and Error, 4 C. J., Section 3311; 2. Costs, 15
C. J., Sections 411, 424, 426; 3. Appeal and Error, 4 C. J., Section 3311;
Costs, 15 C. J., Section 422.

SMITH, C. J., delivered the opinion of the court.

This cause was decided at the last term of this court; the decree of the court below being reversed in part and costs of the appeal adjudged against the appellee.

After the adjournment of the court, and at the expiration of the time allowed by rule No. 14, for the filing of a suggestion of error, the appellee filed a motion herein styled "Motion to Retax Costs," the prayer of which is that the court retax the costs of the appeal and tax the same against the appellant.

This motion, it will be observed, is that the former judgment herein be set aside in so far as it adjudicates court costs and that a different judgment be rendered relative thereto. Consequently, it is, though designated a motion, a suggestion of error, and under rule No. 14 of this court cannot be considered, unless it comes within the provisions of section 968, Code of 1906 (Hemingway's Code, section 677), which the appellee invokes. This statute is as follows:

"Costs omitted in taxing the bill of costs may be taxed at any time upon application to the court; but if the costs, as taxed before, have been paid, the party against whom the retaxation is sought shall have five days' notice of the application; and any erroneous taxation of costs may at any time be corrected by the court on application of the party aggrieved, five days' notice of the motion being given if the rights of any other than the clerk who taxed the costs be involved."

An award of costs is an act of the court, but the taxation thereof is a mere ministerial act to be performed in most jurisdictions by the clerk of the court. 15 C. J., 176. In some jurisdictions costs are taxed by the clerk, and the amount thereof is inserted in the judgment, but the practice in this state, under section 969, Code of 1906 (Hemingway's Code, section 678), which provides that, "when a cause shall be determined, the clerk of the court, . . . shall tax the costs of the case and make out a bill thereof," etc., is for the court to include an award for costs in its judgment without specifying the amount

thereof, and for the clerk to tax the costs, that is, to tax the costs, after the termination of the case by making out an itemized bill thereof, for which service he is permitted under other statutes to charge a fee and include it in his cost bill. Sections 1845, 1848, 1850, and 1851, Hemingway's Code (sections 2614, 2167, 2169, and 2170, Code of 1906). That the taxation of costs is a ministerial act, to be performed by the clerk, is expressly recognized by the provisions of the section of the Code here invoked by the appellant; that notice of a motion made thereunder need not be given, unless the rights of others "than the clerk who taxed the costs be involved." In this connection *Clark* v. *Anderson,* 2 How. (Miss.) 852, may be of historical interest. In that case an effort was made, after final judgment, to retax the costs claimed by the sheriff for services rendered by him during the progress of the trial. The court decided the cause on another ground, but stated that it is "doubtful, after final judgment rendered, whether there can be a taxation of costs." In George's Digest, p. 164, where this case is digested, it is said that "this rule would not apply now, under the practice to enter judgment for the costs generally to be taxed by the clerk." In making this comment on the case, the learned author of the Digest evidently had in mind the statute directing the clerk to tax costs after final judgment enacted subsequent to the decision of the case.

It follows from the foregoing views that this motion is not within the provisions of the statute invoked, and must be dismissed.

*Dismissed.*