70 P.(2d) 896

MERRIFIELD v. BUCKNER et al.

No. 4129.

Supreme Court of New Mexico.

July 26, 1937.

John F. Simms, of Albuquerque, for appellant.

Bradley M. Thomas, Harry S. Bowman, and E. C. Warfel, all of Santa Fé, for appellees.

BRICE, Justice.

This is an action to quiet title to 126 acres of land within the boundaries of the Chilili Land Grant. A statutory answer was filed by the board of trustees of the Chilili Land Grant, as such trustees, and as individuals in behalf of themselves, two hundred residents of the Chilili Land Grant who reside on lands within it, and in behalf of the Town of Chilili; together with a cross-complaint to quiet title in the Town of Chilili; and to cancel certain deeds.

The following are the essential facts, taken from the findings of the court made after the trial:

The Chilili Land Grant, called "The Town of Chilili Grant," was made by Mexico, confirmed by Congress in 1858,

and patented in 1909. It lies in part in what is now Torrance county (formerly Bernalillo) and is a community grant, having certain tracts set apart to residents, and common lands managed by a board of trustees. In 1909, the trustees sold to Samuel Eblen and Joseph Eblen the 126 acres, for $2 an acre; collected the $252 in cash, executed a trustee's deed on November 5, 1909, delivered it to the purchasers, and made a copy of the deed in the minute record of the board itself. The Eblens recorded their deed promptly, assessed the land to themselves for 1910 and up to 1916, and in the latter year sold it by warranty deed to George C. Merrifield for $504 ($4 per acre). Merrifield recorded his deed, assessed the land in his name until his death, and his widow, the plaintiff, through inheritance from him and by deeds from his children of a former marriage, acquired his rights. All taxes from 1910 to 1933, inclusive, have been paid by the Eblens and their successors, and the trustees of the grant never returned this land for taxes or paid any taxes on it. Mrs. Merrifield contracted to sell this land to another, and her contract is outstanding, made in good faith before this litigation started. The land is uncultivated and was a part of the common land of the grant. After buying it in 1916 from Eblen, Merrifield started a fence on one side of the land, cut firewood and posts on it from time to time, and on one occasion, when residents of the grant cut mine props on it, he had the props confiscated as his property. The trustees made no move to question his title, never brought any suit or action, paid no taxes for 25 years, and retained the purchase price received in 1909.

The decree of the district court denied appellant's prayer for relief, canceled a deed executed by the board of trustees of the Chilili Land Grant to Samuel and Joseph Eblen to the 126 acres of land in suit; also a deed to the same lands from the Eblens to George C. Merrifield under whom appellant claims, because invalid; and held that neither appellant nor those under whom she claims ever had any title to the land.

The land grant known as "The Town of Chilili Grant" was made by the republic of Mexico, and title confirmed in "The Town of Chilili" by act of Congress of December 22, 1858 (11 Stat. 374), and patented to the Town of Chilili in 1909.

There is nothing in evidence to indicate the nature of the original Mexican title papers, but it may be taken as a fact that the title is identical with that of the Town of Tomé Grant, confirmed by the same act of the Congress (December 22, 1858), in regard to which the Territorial Supreme Court, in Bond et al. v. Unknown Heirs of Juan Barela, 16 N.M. 660, 120 P. 707, 715, stated: "In other words, the only title which passed from the crown was to the allotments, and these to each of the allottees respectively, and not to the community to be held in common as the property of all. The outlying land remained in the crown sub-

ject, however, to use for pasturage and other purposes by the members of the community. That this last, however, constituted a title in no sense, but simply a permissive use at the pleasure of the crown, is pointed out in the Sandoval Rio Arriba Company and Pena Cases above referred to. The similarity between the present title papers and those in the Pena Case impresses us as particularly noticeable. This being the nature of the Tome title papers, we hold, with the contention of the appellees, that, when Congress came to act upon this claim in 1858, it passed as the property of the United States to the town of Tome all of the land not previously allotted to settlers. This thus partook of the nature of an original grant to that town and to its successors the present defendant corporation. The grant was burdened with no trust in favor of plaintiffs as the successors in title to certain of the original allottees, and the court below was therefore right in declining to impress upon the confirmation any such declaration of a trust."

Upon appeal to the Supreme Court of the United States the Tomé Case was affirmed (229 U.S. 488, 33 S.Ct. 809, 811, 57 L.Ed. 1292). The Supreme Court closed its opinion as follows: " * * * no title to any of the land, passed to any of the petitioners save those to whom allotments were made, and only to the allotted tracts, no further discussion is necessary. When patent to the entire grant issued to the town of Tomé, title to all the unallotted land passed from the United States to the town, unburdened with any trust for heirs or grantees of persons named in the original petition and decree."

These cases follow that of the United States Supreme Court in U. S. v. Santa Fé, 165 U.S. 675, 17 S.Ct. 472, 41 L.Ed. 874; U. S. v. Sandoval, 167 U.S. 278, 17 S.Ct. 868, 42 L.Ed. 168; Rio Arriba Land & Cattle Co. v. U. S., 167 U.S. 298, 17 S.Ct. 875, 42 L.Ed. 175; U. S. v. Pena, 175 U.S. 500, 20 S.Ct. 165, 44 L.Ed. 251.

The confirming act of Congress (December 22, 1858) covered numerous pueblos and town claims, and provided in substance that the pueblo land claims in the territory of New Mexico, designated in the corrected lists as "Number eleven, of the town of Chilili in the county of Bernalillo, * * * are hereby, confirmed; and the Commissioner of the Land-Office shall issue the necessary instructions for the survey of all of said claims as recommended for confirmation by the said surveyor-general, and shall cause a patent to issue therefor as in ordinary cases to private individuals: Provided, That this confirmation shall only be construed as a relinquishment of all title and claim of the United States to any of said lands, and shall not affect any adverse valid rights, should such exist."

As to the nature of pueblo grants, see above-cited cases and Townsend et al. v. Greeley, 5 Wall. 326, 18 L.Ed. 547; Hart v. Burnett, 15 Cal. 530, 550; Grisar v. McDowell, 6 Wall. 363, 18 L.Ed. 863; Palmer v. Low, 98 U.S. 1, 25 L.Ed. 60;

State v. Board of Trustees of Las Vegas Grant, 28 N.M. 237, 210 P. 101; Kavanaugh et al. v. Delgado et al., 35 N.M. 141, 290 P. 798, 800. We stated in the Kavanaugh Case: "The community land grant with which we now deal [Town of Tecolote Grant] is an anomaly among corporations. While we have termed it a quasi municipal corporation, it is in some respects more like a private corporation. Its principal, if not its only, function is to hold title to and manage its common lands; * * *"

The general statutes enacted in 1907 for management of community land grants which provide for the sale of common lands (article 1 of Chapter 29 N.M. Sts.1929) does not apply to the Chilili Grant because of the following provision: "but [this article] shall not apply to any land grant which is now managed or controlled in any manner, other than herein provided, by virtue of any general or special act." (Comp.St.1929, § 29-102.) This act was intended to apply to grants for which no legislative provision had been theretofore made for their management.

The Territorial Legislature of 1876 (Laws 1875–76, c. 51) provided, among other things, for a governing board of the Chilili Grant, consisting of five trustees "Whose duties shall be to pass such ordinance as they may deem necessary for the protection of the common property of the grant, subject to the approval of a majority of the bona fide residents of said grant." and with no other powers, duties, or authority except such as may be implied from that stated. This act has not been changed since 1899. The board of trustees of this grant is a creature of the Legislature, and has only such powers as were conferred by the act creating it. As no authority was granted the board of trustees to sell the common land, nor is such authority implied from that granted, its deed to the Eblens was void, as was the deed from the Eblens to Merrifield under whom appellant claims as a purchaser and his heir at law (as his grantor had no title); unless these deeds, together with the necessary possession, required by section 83-119, N.M.St.1929, have vested title in appellant and her predecessors by limitation. This statute provides in substance that, where a person has been in possession for ten years of lands granted by Spain, Mexico, or the United States, holding or claiming the same under a deed, etc., purporting to convey an estate in fee simple, and no claim to the land by suit is effectually prosecuted within such ten years by another, then such person shall be entitled to "keep and hold possession" against all, etc.

The facts with regard to possession, as set out in appellant's brief, under the heading "Statement of Facts," is as follows: "The land is uncultivated and is a part of the common land of the grant. After buying it in 1916 from Eblen, Merrifield started a fence on one side of the land, cut fire wood and posts on it from time to time, and on one occasion when residents of the grant cut mine props on

it, he had the mine props confiscated as his property."

It should be added that appellant and her predecessors in title have paid all taxes from 1910 until the filing of this suit, and the trustees of the Chilili Grant never returned the land for taxation or paid taxes thereon during that time, about twenty-three years.

The rule laid down by this court in Jenkins v. Maxwell Land Grant Co., 15 N.M. 281, 107 P. 739, 741, and approved in Montoya v. Catron, 22 N.M. 570, 166 P. 909, 910, is: "That to constitute adverse possession the occupancy of one so claiming must be (1) actual; (2) visible; (3) exclusive; (4) hostile; and (5) continuous. If any one of these elements is lacking, no title by adverse possession can ripen."

There was quoted with approval in the Montoya Case the following text: "'It is very generally held that to prove title by adverse possession, or any single element thereof, the evidence should be clear and convincing. It is also a rule of general application that such possession or element cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture. Title by adverse possession cannot be established by inference or implication.' 2 C.J. 276."

We stated in the recent case of G O S Cattle Co. v. Bragaw's Heirs, 38 N.M. 105, 28 P.(2d) 529, 532: "The law controlling and applicable here is as was stated by this court in the case of Baker v. Trujillo De Armijo, 17 N.M. 383, 128

P. 73, 75, where we said: 'It has been settled that to constitute an adverse possession there need not be a fence, building, or other improvement made; it sufficing, for this purpose, that visible and notorious acts of ownership be exercised, for the statutory period, after an entry under claim and color of title. Ewing v. Burnet, 11 Pet.[41] 49, 9 L.Ed.[624] 628. The uses to which the property can be applied, or to which the owner, or claimant, may choose to apply it, the nature of the property, and its situation are largely controlling factors in determining what acts of ownership might be considered requisite to the assertion of an adverse claim.'"

It was there held that a rancher who used a piece of land in the middle of his ranch for watering cattle, a salt ground and range, need not fence it or put other improvements on it, "It being sufficient that visible and notorious acts of ownership be exercised after an entry under claim of right and color of title." See, also, Baker v. Trujillo De Armijo, 17 N.M. 383, 128 P. 73, and Johnston v. City of Albuquerque, 12 N.M. 20, 72 P. 9.

The court made no finding as to what uses the land was adapted or susceptible, and we are not advised in that regard. But the payment of taxes and occasional cutting of timber is not adverse possession. Talbot v. Cook, 57 Or. 535, 112 P. 709; Stern v. Fountain, 112 Iowa, 96, 83 N.W. 826; Stone v. Perkins et al., 217 Mo. 586, 117 S.W. 717.

True, appellant's predecessors had paid taxes on the land for over twenty years, which indicated that they claimed title to it, as the failure to pay taxes on it by the Town of Chilili indicated that it did not claim the title; and would have an important bearing on the question of adverse possession if the facts had been in dispute. Fletcher et al. v. Fuller et al., 120 U.S. 534, 7 S.Ct. 667, 30 L.Ed. 759; Holtzman v. Douglas et al., 168 U.S. 278, 18 S.Ct. 65, 42 L.Ed. 466. But we do not understand that these cases hold the payment of taxes alone is proof of adverse possession, but that it is evidence that may be considered on the question. This court and the Territorial Supreme Court have consistently held that continuous possession for ten years is necessary to perfect a limitation title; though the character of possession depends upon the uses to which the land can be applied. G O S Cattle Co. v. Bragaw's Heirs, supra.

■ The findings of the court are not questioned; indeed, they are appellant's requested findings. The conclusions of the court cannot be disturbed unless we hold that under the facts found it necessarily must follow that the court erred in its conclusion that the appellant had no title by limitation.

■ Aside from paying the taxes, there is no evidence of a limitation title. The fact that appellant's predecessors cut firewood and posts "from time to time" is not sufficient. From what time to what time? There must be some proof of entry and possession. Even though we should hold that this was a proof of entry, there is no proof of any particular ten years of continuous cutting of firewood and posts established. Now and then, or "from time to time," is too indefinite. 2 C.J. p. 276, supra. The court also found as facts that during the twenty-five years immediately prior to filing of the suit that residents of the Chilili Grant had likewise cut firewood and posts from the land in suit; from which it would appear that the land was used as much by the Grant residents as by appellant and her predecessors, and that even this exercise of ownership was not exclusive.

We cannot say that the court erred in his conclusion that appellant had no title to the land.

■ The district court found that appellant and her predecessors in title paid all taxes assessed against the land over a period of twenty-four years, beginning with the year of 1910.

The answer states: "These defendants herein agree to do any equity, or pay any money by refund that the law may direct and this court may require that they do or perform or pay."

After the court had announced the ruling on the question of title the appellant made the following statement: "That inasmuch as the Plaintiff and her predecessors in title have expended in the year 1909, $252.00, paid to the Trustees of the Grant, at the rate of $2.00 per acre, and have paid $174.36 in taxes, beginning

with the year 1910, and continuing up to and including the year 1933, upon the tract of land in the Town of Chilili Grant, that as a condition precedent to awarding relief to the Town of Chilili, as against the plaintiff, that the Town of Chilili should refund to the Plaintiff the sum of $252.00, plus six per cent interest for twenty-five years, plus $174.56 taxes."

The court denied this request and the appellant duly excepted.

The court found that the appellant, Merrifield, and her predecessors in title since the 5th of November, 1909, have claimed to own the land in fee simple as against the Town of Chilili Land Grant and all the world, and this claim has not been questioned or disputed by the Town of Chilili until the filing of this suit. From this finding of the court, it may be inferred that such claim of title was made in good faith, and that the payment of the taxes was for the protection of what appellant believed a good title to the property. Had she not paid the taxes, the appellees necessarily would have had them to pay or lose the property. They not only acquiesced in the payment of the taxes by appellant, but never rendered the property for taxation, as the court found. Under these facts the appellant is entitled to recover for the taxes so paid in good faith, together with 6 per cent. interest thereon from the dates of payment. Langhorst v. Rogers, 88 Ark. 318, 114 S.W. 915; Murphy v. Missouri, etc., Co. 28 N.D. 519, 149 N.W. 957; Bacot v. Holloway, 140 Miss. 120, 104 So. 696, 105 So. 739; Steers v. Kinsey, 68 Ark. 360, 58 S.W. 1050; Sorensen v. Larue, 47 Idaho, 772, 278 P. 1016; Cook v. Berlin Woolen Mill Co., 56 Wis. 643, 14 N.W. 808; Hudson v. Tilly, 154 La. 839, 98 So. 265; Linton v. Allen, 154 Mass. 432, 28 N.E. 780; White v. Harvey, 175 Iowa, 213, 157 N.W. 152; 51 C.J., title, Quieting Title, § 265. Nor does it matter that appellant is a successor to, and not, the person who paid the taxes. She stands in his place as the one entitled to be reimbursed. Zintheo v. Goodrich Rubber Co., 136 Wash. 196, 239 P. 391.

The fact that appellant did not claim the return of the taxes in her pleading we think is immaterial under the circumstances. She has a right to rely upon the tender made by appellees. Miller v. Cook, 135 Ill. 190, 25 N.E. 756, 10 L.R.A. 292. Evidence was taken on the question, an issue made thereof in the trial of the cause, acted upon by the court and no objections made. Under numerous rulings of this court the pleadings will be treated as amended in that respect.

The appellees asked for equitable relief by cross-action; and in response the court canceled all deeds evidencing a title in appellant. They should do equity and pay the taxes with interest, as they offered to do.

A more serious question is whether appellees should be required to return the purchase money. The taxes paid by appellant were debts the owner of the prop-

erty owed to the state and its municipalities. They were secured by a lien on the property, and must have been paid under penalty of its sale for taxes. But the board of trustees had no more authority to sell the land and receive the money than any other five members of the community, or even a stranger to the grant. They could not make regulations for the management of the grant without the approval of the members of the community.

That shadowy corporation known as "The Town of Chilili" is the owner of the land in fee simple by grant from the United States. Its existence and that of like corporations are recognized by the governments of the United States and this state. The state has treated them as municipal corporations with powers lying dormant, or nonexistent, until conferred by a legislative act. The difficulties involved in their administration were recognized by us in Kavanaugh et al. v. Delgado et al., supra, in which through Mr. Justice Watson we stated:

"Many difficult problems have arisen from the slow and gradual implanting of a common-law jurisprudence upon a civil law territory and population. The courts could not reject rights or institutions as nonexistent, because they had not as yet been translated into terms of the common law. With common-law machinery, under the direction of a bar and bench bred to the common law, it has been necessary to enforce rights and recognize institutions unknown to that system. Where technical interpretation and reasoning must have failed, practical administration has found the way.

"The 'town' of Tecolote was here when the United States troops took possession. It was recognized by the Congress more than thirty years before the common law was here adopted as the rule of practice and decision. Its transformation from a Mexican quasi municipal corporation (U. S. v. Sandoval, 167 U.S. 278, 17 S.Ct. 868, 42 L.Ed. 168) to a New Mexico corporation, is difficult to trace either historically or legally. We do not attempt the task."

We recognize the existence of the corporation and its title to the land, and shut our eyes to the "how" or "why" of it. As a practical matter the Legislature has assumed the function of exercising control over them through statutes providing for their administration by boards of trustees. But, as heretofore stated, the power conferred on the board of trustees of the Chilili Grant is limited to passing "such ordinances as it may deem necessary for the protection of the common property of the Grant, subject to the approval of a majority of the bona fide residents of said grant," and such other powers as are necessarily implied from those granted. As the land is subject to taxation and taxes must be paid or the land ultimately lost (State v. Board of Trustees of Las Vegas, 28 N.M. 237, 210 P. 101), there is implied authority to secure funds for the purpose of paying such taxes and for any other legiti-

mate purpose that could be denominated "for protection of common property." No doubt grazing fees may be charged and other like means used to obtain funds with which to pay taxes, but not by a sale of the land, the title to which is not vested in the board of trustees, but in the "Town of Chilili."

It is the legislative policy that these lands are not to be sold, except in proceedings to enforce the payment of taxes. The members of the board of trustees received the purchase money for the land, as individuals and not as representatives of the Town of Chilili. If the funds were now in the treasury of the board, they could be recovered as personal property owned by appellant; or if the money could be traced into property held by the board of trustees for the Town of Chilili a different question would be presented.

The cases of Hobbs Townsite Co. v. Hobbs et al., 38 N.M. 331, 32 P.(2d) 818; Central Transportation Co. v. Pullman's Palace Car Co., 139 U.S. 24, 11 S.Ct. 478, 35 L.Ed. 55; Louisiana v. Wood, 102 U.S. 294, 26 L.Ed. 153; Parkersburg v. Brown, 106 U.S. 487, 1 S.Ct. 442, 27 L.Ed. 238; Brown et al. v. Atchison, 39 Kan. 37, 17 P. 465, 7 Am.St.Rep. 524, and Board of Trustees, etc., v. Postel, etc., 121 Ky. 67, 88 S.W. 1065, 1066, 123 Am.St.Rep. 184, are not authority in this case.

Generally speaking, they were suits brought to recover money paid for bonds illegally issued. In some cases the property bought with the funds was still in possession of the defendant, while in others there were actual benefits received by the municipality which the courts held should be paid for; but in every case the municipality had acted through its duly constituted agents, and the action was brought to recover the fruits of the illegal contract.

But this is not such a suit. The appellant invoked the jurisdiction of the court by filing her suit to quiet title, with the result that it is determined that she has no title, neither did any of those under whom she claims, including the board of trustees of the Chilili Grant.

If it may be presumed that the money was deposited in the treasury of the board and spent legitimately for the benefit of the corporation (though without authority), still it cannot help appellant's case. She has no title to the property, neither had the board of trustees; and, though we ordered the return of the purchase money as a condition of canceling the void deeds, the refusal to comply would not validate them.

The declaration which we have made that the deeds in question are null and void in passing upon appellant's title is in effect a cancellation of the deed. Kittle v. Bellegarde, 86 Cal. 556, 25 P. 55; Gibbons v. Peralta, 21 Cal. 629.

The cause will be reversed and remanded, with instructions to permit appellant to amend her complaint in regard to her claim for refund of taxes with interest, determine the amount thereof, impress an

equitable lien against the land to secure the payment thereof, foreclose such lien, and sell said property under the direction of the court to satisfy such debt and interest, unless paid within such time as the Court shall direct.

The decree of the district court is otherwise affirmed. It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.