**STATE, EX REL CROMWELL, Plaintiff-Appellee, v MONT-GOMERY COUNTY TREASURER ET, Defendants-Appellants.**

Ohio Appeals, Second District, Montgomery County.

No. 1934. Decided May 7th, 1947.

Robert C. Knee, Dayton, for plaintiff-appellee.

Nicholas F. Nolan, Dayton, and Landis, Ferguson, Bieser & Greer, Dayton, for defendants-appellants.

**OPINION**

By THE COURT

This is an appeal on law from the judgment of the Common Pleas Court of Montgomery County, Ohio, rendered against the defendants-appellants, Chester A. Myers, the American Surety Company and the New York Casualty Company, in the sum of $28,077.14.

The relator, Ben Cromwell, as a taxpayer of Montgomery County, Ohio, brings this action in the name of the State of Ohio for the benefit of said County to recover the sum of money paid to Chester A. Myers, Treasurer of said county, by the Miami Conservancy District, said sum being one per cent. of delinquent Miami Conservancy District taxes collected by him from 1934 to 1943, inclusive.

The matter was tried to the court without the intervention of a jury. The essential facts were stipulated by agreement of counsel.

The record shows that from the first Monday in September, 1933, Chester A. Myers has been acting as the duly elected and qualified Treasurer of Montgomery County, Ohio; that from 1934 to 1943, inclusive, the Miami Conservancy District paid to Chester A. Myers one per cent. on delinquent taxes collected by him for said District, under the provisions of §6828-56 GC, which, in the aggregate, amounted to $19,558.22. This money was retained by Chester A. Myers for his services in making said collection. The relator contends that Chester A. Myers was not authorized to retain said money as his own, but was required to pay said money into the general fund of the county.

The trial court sustained the claim of the relator and rendered judgment against the defendants-appellants in the sum of $19,558.22, together with six per cent. interest on the annual remittances from the date of payment.

Under the several assignments of error the defendants-appellants claim that said judgment is contrary to law.

The sole question for the court to determine is whether Chester A. Myers was authorized to retain for his own use the

one per cent. of delinquent taxes collected by him for the Miami Conservancy District, under the provisions of §6828 GC, or required to pay the same into the County Treasury to the credit of the general fund, under the provisions of §2977 GC.

The Conservancy Act of Ohio, under which the Miami Conservancy District was organized, is found in §6828-1 GC to 6828-79 GC, inclusive. Sec. 6828-56 GC provides:

"If any county treasurer or other person entrusted with the collection of these assessments refuses, fails or neglects to make prompt payment of the tax or any part thereof collected under this chapter to the treasurer of said district upon his presentation of a proper demand, then he shall pay a penalty of ten per cent. on the amount of his delinquency; such penalty shall at once become due and payable and both he and his sureties shall be liable therefor on his official bond. The said county treasurer shall retain for his services one per cent. of the amount he collects on delinquent taxes. (Emphasis ours.)

The defendants-appellants contend that under the provisions of this section Chester A. Myers was authorized, and did retain the one per cent. of the amount he collected in delinquent taxes. The relator contends that Chester A. Myers was required to pay said money into the County Treasury to the credit of the general fund of the county, under the provisions of §2977 GC, which provides:

"All the fees, costs, percentages, penalties, allowances and other perquisites collected or received by law as compensation for services by a county auditor, county treasurer, probate judge, sheriff, clerk of courts, surveyor or recorder, shall be so received and collected for the sole use of the treasury of the county in which they are elected and shall be held as public moneys belonging to such county and accounted for and paid over as such as hereinafter provided."

There are several other related sections, which provide for the disposition of fees, percentages, etc., and compensation to be paid to the County Treasurer. Sec. 2983 GC, in part, provides:

"On the first business day of each month, and at the end of his term of office, each of such officers shall pay into the county treasury to the credit of the general county fund, on the warrant of the county auditor, all fees, costs, penalties,

percentages, allowances and perquisites of whatever kind collected by his office during the preceding month or part thereof for official services, provided that none of such officers shall collect any fees from the county;"

Sec. 2991 GC contains the salary schedule for the County Treasurer.

Sec. 2996 GC provides as follows:

"Such salaries and compensation shall be instead of all fees, costs, penalties, percentages, allowances and all other perquisites of whatever kind which any of such officials may collect and receive, provided that in no case shall the annual salary and compensation paid to any such officer exceed six thousand dollars, except in the case of the probate judge whose annual salary shall not exceed nine thousand dollars."

Sec. 2977 GC, together with the other related sections, were passed for the purpose of abolishing the former county fee system. It became the settled and fixed policy of the state to pay to elected public officials a salary for their official services. However, the legislature has the power to modify or depart from this settled policy whenever it desires to do so. It has done so in certain instances. Under former §2846 GC the Sheriff was allowed to "receive from the County Treasurer in addition to his salary his legal fees for services in criminal cases wherein the state fails to convict," etc.

Sec. 3004 GC provides that the Prosecuting Attorney shall be allowed annually "in addition to his salary and to the allowance provided by section 2914, an amount equal to one-half the official salary," etc.

These sections are not particularly helpful in determining the issue in the instant case, as the statute expressly provides that the extra allowance shall be "in addition to the salary." A provision similar to that contained in §6288-56 GC is found in §5348-10b GC, which provides that the Probate Judge shall receive fees for services rendered in inheritance tax proceedings and authorizes such fees "to be retained by them personally as compensation for the performance by them of the additional duties imposed on them," etc.

We recognize the rule that the legislative intent to allow compensation in addition to that allowed under the salary law must clearly appear. State, ex rel, Enos v Stone, 92 Oh St 63. In State, ex rel, Horner, 16 N. P. (N. S.) 449, the Clerk of Courts was denied the right to retain for his own use fees

in naturalization cases, although the United States Naturalization Act provided that the Clerk was authorized "to retain one-half of the fees" collected by him in such naturalization cases. In **Talbott v State, ex rel, Houston, 5 Oh Ap 262**, the Court of Appeals of the Second District held that under the salary act of 1906, and prior to the enactment of the General Code of 1910, "Clerks of the Courts of Common Pleas are entitled to retain one-half the fees received by them in naturalization cases." This case turned on the use of the word "now" in Sec. 1 and also in Sec. 18 of the original county salary act. Sec. 1, in part, provided that "all the fees, costs, percentages, * * * which by law may **now** be collected," etc. Sec. 18, in part, provided that "said salaries shall be in lieu of all fees, costs, percentages, * * * which any officials herein named may **now** collect," etc. Secs. 1 and 18 of the salary act were included and superseded by §§2977 **and** 2996 GC, respectively, adopted February 14, 1910. When the General Code was adopted in 1910 the word "now" was omitted from §§2977 **and** 2996 GC. In the case of Talbott v State, ex rel, supra, the fees in question were collected before the adoption of the Code of 1910, and, consequently, the salary law, as it was passed in 1906, applied.

In construing §6828-56 GC we are required to determine whether the legislature, when it provided that "The said County Treasurer shall retain for his services one per cent. of the amount he collects on delinquent taxes," intended that the County Treasurer shall retain this sum for his own personal use, or intended that he should pay this money into the County Treasury, as provided by §§2977 and 2983 GC. In **State, ex rel, Harness v Roney, 82 Oh St 376**, it is held:

"The province of construction is to ascertain and give effect to the intention of the legislature, but its intention must be derived from the legislation and may not be invented by the court."

We must gather the legislative intent from the provisions of the Conservancy Act of Ohio.

The relator contends that there is no inconsistency or repugnancy between the provisions of §6828-56 GC and §2977 GC. It is urged that §6828-56 GC merely authorizes the County Treasurer to receive a per cent. of delinquent taxes collected by him, and that §2977 GC directs the distribution of such sums of money. With this contention we do not agree. Under §2977 GC and related sections 2983 and 2996 GC, if these sec-

tions stood alone, the County Treasurer would be required to pay said moneys into the treasury of the county to the credit of the general county fund. Under §6828-56 GC the County Treasurer is authorized to "retain for his services" such moneys. In our judgment there is a repugnancy which cannot be ignored and the provisions of the several sections, when considered together, cannot be construed to harmonize. In determining the intention of the legislature we must consider the purpose to be served by the Conservancy Act. In **Vol. 37 O. Jur., p. 662, Sec. 363**, the rule is stated as follows:

"In construing a statute, courts frequently refer to the 'design' thereof, or to that which is 'designed' to be accomplished thereby. When the real design of a legislature, in ordaining a statute, although it is not precisely expressed, is yet plainly perceivable or ascertainable with reasonable certainty, the language of the statute should be given such a construction as will carry that design into effect."

In **City of Cincinnati, et al, v Guckenberger, 60 Oh St 353**, it is held:

"A code of statutes relating to one subject is presumed to be governed by one spirit and policy, and intended to be consistent and harmonious, and all of the several sections are to be considered in order to arrive at the meaning of any part, unless a contrary intent is clearly manifest."

A review of the provisions of the Conservancy Act leads to the conclusion that the Miami Conservancy District became a separate, distinct political subdivision of the State of Ohio, operating as a distinct entity, independently of any other political subdivision, and was organized, administered and operated for the sole and specific purpose of preventing, and protection against, floods. The District has its own court, consisting of Common Pleas Judges drawn from the counties composing the District (§6828-5 GC), its own Board of Directors (§6828-8 GC), its own President, Secretary (6828-9 GC), and its own Treasurer, Chief Engineer, attorney and other agents and assistants as may be needful (§6828-11 GC).

The Common Pleas Judges who constitute the court receive compensation for their services (§6828-5 GC), and the State Treasurer is also allowed reasonable compensation, together with the costs of the office of the Treasurer of State for registering and paying bonds issued by the District (§6828-

47 GC); that the portion of the funds paid to the Treasurer of State that represents the costs of his office shall be paid into the State Treasury to the credit of the general revenue fund. It is assumed that the remaining portion of the funds paid to the State Treasurer is retained by him, personally. The Act provides that all persons, whether officers of the District, or public officials, who perform services for the District are to be compensated out of District funds. The legislative intent is clear that the District is to carry the entire financial burden incident to its operation and administration and that all persons performing services for the District are to be personally compensated.

Under the provisions of §6828-51 GC the County Treasurer who collects assessments for the District is required, on warrant of the County Auditor, to pay such moneys to the Treasurer of the District. Under §6828-52 GC the County Treasurer, before receiving the assessment book—

"Shall execute to the District and deliver to the board of directors a bond with at least two good and sufficient sureties or a surety company, and which shall be paid for by the district, in a sum prescribed by the board of directors, and approved by the court, conditioned that said treasurer shall pay over and account for all assessments so collected by him according to law."

This section further provides that the Secretary of the District shall be the custodian of the bond.

Sec. 6828-56 GC, which has heretofore been quoted in full, provides that if the County Treasurer, or other person entrusted with the collection of the assessments, refuses, fails or neglects to make prompt payment thereof to the Treasurer of the District, he shall pay a penalty of ten per cent. on the amount of his delinquency. Then follows the language under construction: "The said County Treasurer shall retain for his services one per cent. of the amount he collects on delinquent taxes." It is significant that the provision for compensation to the County Treasurer for his services is contained in the same section which imposes a penalty upon the County Treasurer for his failure to properly discharge his responsibility under the Act.

Sec. 6828-58 GC provides that—

"Before any duties devolve upon a county auditor or a county treasurer under this chapter, the board of directors of

the district shall consult them and agree upon the salaries for the extra clerical force, if any, required in their respective offices to carry out the requirements of the law * * * and the said board of directors shall provide for and pay said salaries to said clerk or clerks, while engaged on the work of the district, which clerks shall be selected and appointed by each of said county officers for their respective offices."

Thus it appears that before the County Treasurer enters upon his duties he must meet the qualifications prescribed by the Act; first, by giving a bond, which runs in favor of the District, and, second, by agreeing with the Board of Directors respecting extra clerical force.

It must be observed that in collecting Conservancy assessments the County Treasurer is performing services which are not prescribed as duties of the County Treasurers under the general law; such services do not devolve upon the County Treasurer by virtue of his office, but are outside and beyond his usual legal duties. Only the Treasurer of counties which are a part of a District organized under the Act are called upon to perform such services. The case hereinabove cited, relative to the payment of additional compensation to County Clerks for their services in naturalization matters involved a question applicable to the Clerks of every county in the state. Statutory provisions relative to the payment of additional compensation to Sheriffs, Prosecuting Attorneys, Probate Judges, hereinabove referred to, have a state-wide application. The question as to whether the County Treasurer is authorized to retain for his own use one per cent. of the delinquent taxes collected for the Miami Conservancy District does not have a state-wide application. Herein lies a clear distinction, which gives rise to a different legislative intent.

Under the Conservancy Act the County Treasurer, in performing his duties for the District, is not acting for the county but for the District; he is required to make a distinct, independent qualification for the office, the qualification being prescribed by the Conservancy Act; the money which he collects is not county money but District money; he does not account to the county, but to the District officers; his responsibility is to the District, and his bond runs in favor of the District; if he fails to make prompt payment to the District, he is penalized for his delinquency; for this personal service and personal responsibility, the legislature recognized his right to be compensated, personally, and so provided in §6828-56 GC. The Treasurers of the counties embraced in the Miami Con-

servancy District organized under the Conservancy Act of Ohio perform services for a separate and distinct political subdivision, operating and administered as a distinct entity, and said Treasurers, as such, occupy a distinct, independent office from that of Treasurer of the County; perform services not required of them as County Treasurers under the general law of Ohio, and in collecting delinquent taxes for the District they are performing services for the District rather than the county. Herein lies another clear distinction, from which the court may draw a different legislative intent.

After a consideration of the provisions of the Act, the purpose to be accomplished, the manner in which the District is operated and administered, the conclusion is inescapable that the legislature intended to, and did, make an exception to the general salary law in the enactment of §6828-56 GC. If any doubt exists as to the legislative intent all such doubt is removed by the enactment of §6828-76 GC, which, in part, provides:

"**All acts or parts of acts conflicting in any way with any of the provisions of this act (G. C. Secs. 6828-1 to 6828-79,** in regard to improvements of this or a similar character, or regulating or limiting power of taxation or assessment, **or otherwise interfering with the execution of this law according to its terms, are hereby declared inoperative and ineffective as to this act, as if they did not exist.**" (Emphasis ours.)

In our consideration of the provisions of this section, and the ascertainment of the legislative intent, we recognize and apply the well-established principle of law that the legislature are presumed to know the existing statutes, and the state of the law, relating to the subjects with which they deal. Lewis' Autherland Statutory Construction, 2nd Ed., Vol. 2, Sec. 447, page 852. After giving due consideration to the provisions of §6828-76 GC we are of the opinion that the legislative intent is plainly perceivable and ascertainable with reasonable certainly that the provisions of §6828-56 GC should prevail over the salary law (§2977 GC). Consequently, Chester A. Myers is entitled to retain for his own personal use the moneys in question.

The judgment of the trial court was contrary to law, prejudicial to the rights of the defendants-appellants, and said

judgment is, therefore, reversed. Costs are assessed against the relator.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.