732 P.2d 426

Robert ARMIJO, Plaintiff-Appellee,

v.

CEBOLLETA LAND GRANT, dba
Board of Directors of the
Cebolleta Land Grant, Defendant-
Appellant.

Robert ARMIJO, Plaintiff-Appellant,

v.

CEBOLETTA LAND GRANT,
Defendant-Appellee.

Nos. 16052, 16048.

Supreme Court of New Mexico.

Jan. 30, 1987.

Reginald J. Garcia, Simms & Garcia, Albuquerque, for defendant-appellee.

Reggie C. Chavez, Belen, for plaintiff-appellant.

## OPINION

WALTERS, Justice.

Two interlocutory appeals are brought by plaintiff Armijo and defendant Cebolleta Land Grant, respectively, to challenge the lower court's orders on motions for summary judgment. The appeals are consolidated for our decision.

Armijo served as president of the Cebolleta Land Grant Board of Trustees from April, 1981 until April, 1983. In July, 1983, Armijo submitted a statement to a new board which sought reimbursement for the sum of $52,000, alleged to be the rental value of a front-end loader used by the land grant for a period of fifteen months. He also requested reimbursement of $9,500 for business trips taken on behalf of the land grant during his tenure as board president. He relied on the actions of the Board of Trustees which, at a public meeting, had approved payment of expenses for business trips taken on behalf of the grant in the

amount of $100 per trip, plus allowance of an additional $50 to the board member furnishing transportation for such trips.

The new board refused to pay, and Armijo filed suit. The district court granted the land grant's motion for summary judgment with respect to Armijo's claims for reimbursement of travel expenses, but denied it with respect to Armijo's claims for reimbursement for the use of the front-end loader. We are asked to resolve the following issues:

I. Does NMSA 1978, Section 49–1–14, bar Armijo from recovering reimbursement authorized by the Board of Trustees for expenses incurred in the administration of the land grant?

II. Is Armijo barred from recovering $52,000 for use of his equipment on a construction project within the land grant during the period he was a member of the Board of Trustees?

We affirm.

## I.

■ The land grant bases its refusal to pay Armijo for travel expenses on NMSA 1978, Section 49–1–14 (Cum.Supp.1986), which provides in relevant part:

[The Board of Trustees] may fix and pay to its members a salary not to exceed two hundred dollars ($200) to any member in any one month, which salary as fixed shall be in full as compensation for the duties performed by such board or the individual members thereof within the exterior boundaries of the grant.

Armijo argues that this section addresses only the question of salary and, because it is silent on the issue of reimbursement for expenses incurred in the administration of a trust, it does not apply. For instance, Armijo points out that among the board's enumerated powers is the right to "sue and be sued." NMSA 1978, § 49–1–3(B) (Cum. Supp.1986). This power, he contends, implies that the board may hire legal counsel, pay legal fees and, presumably, pay for trips of board members to pursue law suits or to defend against them. It is a fact that many of the itemized trips taken by Armijo

were to discuss pending litigation. We can agree that reimbursement for expenses incurred by a trustee while in the performance of his duties is widely recognized. *See* Bogart, *Trusts and Trustees*, § 975, pp. 16–21 (2d ed. 1983). Here, however, Armijo is not seeking reimbursement for expenses incurred as a trustee; rather, he is seeking compensation for services he himself performed as a lawyer. His entitlement to legal fees for legal services rendered to the board while he was a member of that board presents a question of the propriety of such self-dealing.

In *Kavanaugh v. Delgado*, 35 N.M. 141, 290 P. 798 (1930), this Court recognized that a community land grant is a quasi-municipal corporation. During the time period covered by this lawsuit, Armijo was an elected member of quasi-municipal Cebolleta Land Grant Board of Trustees for a fixed term, with duties affecting the public. NMSA 1978, §§ 49–1–3, –4; *see also State ex rel. Gilbert v. Board of Comm'rs*, 29 N.M. 209, 218, 222 P. 654, 657 (1924). Accordingly, he should be held to standards and rules similar to those governing other public officials.

■ In *Merrifield v. Buckner*, 41 N.M. 442, 70 P.2d 896 (1937), it was said that, "[a]s a practical matter the Legislature has assumed the function of exercising control over [community land grants] through statutes providing for their administration by boards of trustees." *Id.* at 451, 70 P.2d at 901. As such, "[t]he governing body of a grant is a creature of the Legislature, and has only such powers as are conferred by the particular act creating it." *Board of Trustees of Las Vegas v. Montano*, 82 N.M. 340, 343, 481 P.2d 702, 705 (1971). The legislative enactment of Section 49–1–14 reserved to the legislature the power to set the amount of compensation for community land grant board members. A salary specified by law for the discharge of official duties impliedly excludes the allowance of any other compensation. *See, e.g., DeSilva v. Brown*, 38 Haw. 166, 173 (1948) (question of compensation is dependent upon the terms of the law which creates

the office and prescribes its duties); *Bayless v. Knox County*, 199 Tenn. 268, 286, 286 S.W.2d 579, 587 (1956) (officer may not recover compensation additional to the compensation fixed by statute for expenses); *State ex rel. Cromwell v. Myers*, 80 Ohio App. 357, 362, 73 N.E.2d 218, 220 (1947) ("legislative intent to allow compensation in addition to that allowed under the salary law must clearly appear").

Underlying these decisions is the recognition that, by its very nature, holding public office creates opportunities for an officer to take advantage of or profit from his position. A statutorily fixed compensation limits the likelihood that public officials will be tempted to participate in activities involving potential conflicts of interest. In this case, then, the board's authorization for travel reimbursement was an impermissible attempt to circumvent action taken by the legislature designed to prevent the very situation confronted here. If the board felt that its members should receive some form of expense reimbursement incident to administration by the board, authorization should have been sought from the legislature. *See Merrifield.* Armijo cannot legitimately claim unjust enrichment to the board, or quasi-contract for trip payments, because the statutory compensation is "in full as compensation for the duties performed by such board or the individual members thereof within the exterior boundaries of the grant." NMSA 1978, § 49–1–14 (Cum.Supp.1986). The trial court's grant of summary judgment in favor of the land grant on this issue was proper.

## II.

■ For similar reasons, the law does not permit Armijo to recover on his contract with the land grant for use of his front-end loader. Armijo's complaint alleges that he had an agreement as of approximately May, 1981, to furnish his front-end loader to land grant purposes for $3,500 per month. As we have already noted, Armijo was an elected member of the board at that time. The delicacy of that relationship was addressed in *Meinhard v.*

*Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928), where Justice Cardozo wrote:

Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place.

In more recent years, the validity of contracts between officers and the governing bodies of which they are members have generally involved construing one or more "conflict of interest" statutes. Some of those cases are discussed hereafter. If land grants were "true" municipalities, Armijo would have been statutorily proscribed from "acquir[ing] a financial interest in any new or existing business venture or business property of any kind when such officer or employee believes or has reason to believe that the new financial interest will be directly affected by his official act." NMSA 1978, § 3–10–4(A) (Repl.Pamp.1985). However, because such "conflict of interest" statutes are penal in nature, they must be strictly construed. The land grant being only a quasi-municipal corporation, we are enjoined by that rule of construction to hold that Section 3–10–4(A) does not apply to Armijo.

Nevertheless, we take notice that "conflict of interest" statutes represent a codification of the common law principle which voided certain contracts as violative of public policy. *Moody v. Shuffleton,* 203 Cal. 100, 262 P. 1095 (1928). For instance, an Arkansas court held that a contract between a commissioner of a sewer improvement district and the other commissioners was invalid because the commissioner "could not make a contract with himself." *Sloss v. Turner,* 175 Ark. 994, 1000, 1 S.W.2d 993, 995 (1928). Such contracts are "contrary to public policy and are void for that reason." *Id.* A Georgia court voided a contract for the sale of a truck to the city by the mayor, even though there was no statute or charter provisions prohibiting the contract, because the "rule invalidating such contracts is based upon public policy." *Trainer v. City of Covington,* 183 Ga. 759, 760, 189 S.E. 842 (1937). This Court has

recognized that "contracts opposed to public policy cannot be enforced." *Davis v. Savage,* 50 N.M. 30, 43, 168 P.2d 851, 859 (1946); *accord DiGesu v. Weingardt,* 91 N.M. 441, 575 P.2d 950 (1978); *City of Artesia v. Carter,* 94 N.M. 311, 610 P.2d 198 (Ct.App.1980). Consequently, under common law principles, the contract in question is void as against public policy, and Armijo is precluded from recovering on the contract.

 The land grant further argues that Armijo should also be barred from recovering in quantum meruit, but relies for this proposition on cases where the contract in question was expressly prohibited by a conflict of interest statute. *See, e.g., Town of Boca Raton v. Raulerson,* 108 Fla. 376, 146 So. 576 (1933); *Arthur v. Trindel,* 168 Neb. 429, 96 N.W.2d 208 (1959). Here, there is no statute applicable to quasi-municipal corporations. Thus, we are persuaded by those cases distinguishing between contracts expressly prohibited by statute and those held void as against public policy, *see, e.g., Town of Boca Raton v. Raulerson; Miller v. City of Martinez,* 28 Cal.App.2d 364, 82 P.2d 519 (1938), to hold that although contracts may be voided solely because they are against public policy, the claimant may still recover in quantum meruit. *Lainhart v. Burr,* 49 Fla. 315, 38 So. 711 (1905).

We affirm the lower court's denial of summary judgment on the issue of plaintiff's claim for the contract rental value of his equipment and remand for a determination of the value of the services rendered by Armijo to the land grant for use of his front-end loader.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and SOSA, Senior Justice, concur.