TERRY, Appellee,

v.

SPERRY et al., Appellants.

[Cite as *Terry v. Sperry,* 186 Ohio App.3d 798, 2010-Ohio-1299.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 08–MA–227.

Decided March 23, 2010.

Mark S. Finamore, for appellee.

Anthony L. Seegers, for appellants Gayle Sperry, Kristofer Sperry, Evelyn Sperry, and Myrddin Wine Company.

David S. Pennington, Ohio Farm Bureau Federation, Inc., for appellants Ohio Farm Bureau Federation, Inc., and Mahoning County Farm Bureau.

———

DONOFRIO, Judge.

{¶ 1} Defendants-appellants, Gayle Sperry, Kristopher Sperry, and Evelyn Sperry, appeal from a Mahoning County Common Pleas Court entry of summary judgment in favor of plaintiff-appellee, Jenifer Terry, the Milton Township Zoning Inspector, finding that their winery is not exempt from Milton Township zoning regulations.

{¶ 2} Appellant Gayle Sperry owns and resides on property in Milton Township. On this property, she built her home and a freestanding addition. Appellants Kristopher and Evelyn Sperry are Gayle's son and daughter-in-law. Together, the three appellants operate Myrddin Winery ("the winery"), which they opened in May 2005 on Gayle's residentially zoned property.

{¶ 3} Prior to commencing operations, appellants contacted the Milton Township Zoning Inspector at the time, Betsy Opre, to inform her of their planned home business and to inquire whether there were any local requirements for beginning such an operation. She informed them that there were no local permits necessary to start such a business and that they could begin their operations immediately. Appellants had already obtained the county, state, and federal permits and licenses required for operating the business. Appellants began operation of the winery based on the oral representation of Opre that they were permitted to do so. Zoning certificates in Milton Township are issued only orally by the zoning inspector and not in writing.

{¶ 4} As stated by the trial court, appellants' winery business is as follows:

{¶ 5} "Defendants make and bottle wine on the premises and sell the wine and other shelf stable foods to customers who enter the premises for that purpose. The property contains 20 grape vines, of which only 12 are harvested. Defendants purchase other grapes and grape juices not grown on the property for use in the production of wine on the premises. The parties stipulate that ninety-five percent (95%) of the sales of bottled wine sold on the premises are from grapes and/or grape juices not planted, cultivated or harvested on the property."

{¶ 6} To advertise its business, the winery has a three-by-nine inch "rack card" with the winery's name and address on it that is displayed at the winery and some other local wineries. It has a website listed through the Ohio Department of Agriculture's website and in other publications. It also had a sign the size of a

political yard sign, an arrow on the winery's mailbox, and a sign located across the street from the winery, all informing visitors of the business's location. The winery also provides off-street parking to its patrons.

{¶ 7} Appellee filed a complaint pursuant to R.C. 519.24 on January 23, 2008, alleging that the winery was in violation of Milton Township Zoning Resolution, Section 5, B, "R–1" Residential District, and Section 4, Definitions,[1] and that appellants continued to operate the winery despite notice of their violation of the zoning resolution. Appellee asked that the court permanently enjoin appellants from using their property in violation of the Milton Township Zoning Resolution.

{¶ 8} The parties filed cross-motions for summary judgment. They also stipulated to numerous facts and agreed that there were two issues for the trial court to determine: (1) Are the winery activities an agricultural use of the property as defined by R.C. 519.01; and (2) Is the winery exempt from zoning regulation by Milton Township pursuant to R.C. 519.21(A)?

{¶ 9} The trial court answered both questions in the negative. The court found that the winery's activities of making wine and marketing wine and shelf stable-foods on the property were the primary uses and that agriculture was secondary. Therefore, the court found that the production of wine on the property was not

---

1. {¶ a}These sections provide:

{¶ b}"Uses permitted. The following uses are permitted. A zoning certificate may be required as provided for in Section 10 of this Ordinance.

{¶ c}"a. Agriculture

{¶ d}"b. One family dwellings * * *.

{¶ e}"c. Churches and other places of worship.

{¶ f}"d. * * * schools * * *.

{¶ g}"e. Home Occupations as defined in Section 4.

{¶ h}"f. Automobile parking spaces shall be provided as required in Section 6.

{¶ i}"g. Accessory buildings.

{¶ j}"Home occupations are defined as an occupation conducted in a dwelling unit or small garage provided that:

{¶ k}"a. No person other than members of the family residing on the premises shall be engaged in such occupation conducted entirely in the dwelling unit, or garages containing 600 square feet or less.

{¶ l}"b. The use of the dwelling unit of the home occupation shall be clearly incidental and subordinate to its use for residential purposes by its occupants, and not more than 25% of the total floor area of the dwelling unit shall be used in the conduct of the home occupation;

{¶ m}"c. There shall be no change in the outside appearance of the building or premises or other visible evidence of conduct of such home occupation other than one sign as permitted in Section 8C of this Ordinance;

{¶ n}"d. Sufficient offstreet parking shall be provided based on the type of home occupation and such occupation shall not create traffic, parking, sewerage, or water use in excess of what is normal in a residential neighborhood.

{¶ o}"e. No equipment or process shall be used in such occupation which creates noise, vibration, glare, fumes, odors, or electrical interference detectable to the normal senses off the lot, if the occupation is conducted in a single family residence, or outside the dwelling unit if conducted in other than a single family residence."

agriculture within the meaning of R.C. 519.01. The court further reasoned that because the activities conducted on the property were not an agricultural use of the property, R.C. 519.21(B) does not apply. Therefore, it found that the winery was not exempt from the local zoning regulations. Consequently, the court granted appellee's motion for summary judgment and denied appellants' motion.

{¶ 10} Appellants filed a timely notice of appeal. On appellants' motion, this court issued a stay of the trial court's judgment pending this appeal.

{¶ 11} Appellants raise three assignments of error. All of appellants' assignments of error allege that summary judgment in favor of appellee was incorrect. Thus, we will review appellants' assignments of error under the summary-judgment standard of review.

{¶ 12} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, an appellate court applies the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377.

{¶ 13} Appellants' first and third assignments of error raise a similar issue. Therefore, we will address them together. They state:

{¶ 14} "The trial court erred when it incorrectly interpreted R.C. § 519.01."

{¶ 15} "The trial court erred when it failed to consider whether appellants' activities in the operation of the winery were exempt from the Milton Township zoning regulation pursuant to R.C. § 519.21."

{¶ 16} R.C. 519.01 provides:

{¶ 17} "As used in section 519.02 to 519.25 of the Revised Code, 'agriculture' includes farming; ranching; aquaculture; apiculture; horticulture; *viticulture*; animal husbandry, * * *; poultry husbandry * * *; dairy production; the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, ornamental trees, flowers, sod, or mushrooms; timber; pasturage; any combination of the foregoing; *the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production.*" (Emphasis added.)

{¶ 18} The Ohio Supreme Court has consistently held that "[s]tatutes pertaining to the same subject matter are construed in pari materia." *Bartchy v.*

*State Bd. of Edn.,* 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, at ¶ 16; *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, at ¶ 28. Moreover, " '[a] code of statutes relating to one subject is presumed to be governed by one spirit and policy, and intended to be consistent and harmonious; and all of the several sections are to be considered, in order to arrive at the meaning of any part, unless a contrary intent is clearly manifest.' " *State ex rel Cromwell v. Myers* (1947), 80 Ohio App. 357, 364, 36 O.O. 62, 73 N.E.2d 218, quoting *Cincinnati v. Guckenberger* (1899), 60 Ohio St. 353, 54 N.E. 376.

{¶ 19} Thus, a reading of R.C. 519.01 must also include consideration of R.C. 519.21, which is also at issue in this case. R.C. 519.21(A) provides:

{¶ 20} "Except as otherwise provided in division (B) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, including buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture, and no zoning certificate shall be required for any such building or structure."

{¶ 21} Reading R.C. 519.01 together with R.C. 519.21(A) reveals that a township zoning commission may not prohibit the use of any land for "agriculture." As stated above, agriculture is defined in R.C. 519.01 and includes viticulture.

{¶ 22} Appellants argue here that the winery's activities qualify as "agriculture" as defined by R.C. 519.01, and therefore the zoning inspector has no power to limit the use of the land for purposes related to operating the winery.

{¶ 23} Appellants contend that the trial court's definition of "viticulture" is incorrect. They assert that "viticulture" includes the growing of grapes for making wine.

{¶ 24} The trial court defined "viticulture" as "the production of wine." However, the application of this definition does not consider the growing of grapes in any way. Appellants were producing wine (fermenting, bottling, and labeling it) from the grapes and juice obtained off-site in addition to growing a small number of grapes on site.

{¶ 25} However, as appellants assert, the trial court's definition of "viticulture" is incorrect. Merriam–Webster's online dictionary defines "viticulture" as "the cultivation or culture of grapes especially for winemaking." http://www.merriam-webster.com/dictionary/viticulture.

{¶ 26} Given this definition of viticulture, we must go on to determine whether the "but are secondary to, such husbandry or production" clause applies to viticulture.

{¶ 27} Appellants argue that the word "production" should be applied only to the words in the statute with which it is specifically used. They contend that because "production" is not used to describe "viticulture," the phrase "but are secondary to, such husbandry or production" does not apply to viticulture.

{¶ 28} The word "production" appears in the phrases, "the production of poultry"; "dairy production"; "the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, flowers, sod, or mushrooms"; and finally "but secondary to, such husbandry or production." The word "production" does not appear along with the words "farming; ranching; aquaculture; apiculture; horticulture; [or] viticulture." However, to dissect this statute in the way appellants suggest would mean that different activities that constitute agriculture are to be treated differently under the statute even though they are all part of the same definition. Such a result would be illogical.

{¶ 29} A simpler analysis of the statute yields the same result. The statute contains a list of items that constitute "agriculture." One of the items on the list is "viticulture," which we have already stated is the cultivation of grapes especially for wine making. Another item on the list is "the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production." Thus, this item of "processing, drying, storing, and marketing" is just another type of agriculture. And this type of agriculture requires that the "processing, drying, storing, and marketing" is secondary to the production of the agricultural products.

{¶ 30} Appellants also contend that the use of semicolons in R.C. 519.01 should be construed to separate the clause "but are secondary to, such husbandry or production" from the list of activities that appear at the beginning of the section, which includes "viticulture."

{¶ 31} This argument is not persuasive. In looking at the entire statute, we find the intent of the legislature clear: to define the activities that constitute "agriculture." Appellants' acts of cultivating grapes for winemaking are clearly included as viticulture, and thus, agriculture. However, it is the remainder of appellants' activities (making wine from outside grapes and juices, advertising their products, selling shelf stable foods, etc.) that do not fit into any of the categories listed in R.C. 519.01. These activities are not encompassed in "viticulture." Thus, the only possible category that they could fit into is "the processing, drying, storage, and marketing of agricultural products when those activities are

conducted in conjunction with, but are secondary to, such husbandry or production."

{¶ 32} But there is no evidence in the record to suggest that viticulture is the primary activity at the winery and that the remaining activities are secondary. Instead, just the opposite is true. The property contains 20 grape vines, of which only 12 are harvested. Appellants purchase grapes and grape juices from vendors who ship the grapes and juices to appellants for processing, bottling, and selling. Wine and shelf-stable foods are sold on the premises. Ninety-five percent of the sales of bottled wine sold on the premises are from grapes/grape juices not planted, cultivated, and harvested on the property. Only five percent of the sales of bottled wine sold on the premises are from grapes planted, cultivated, and harvested on the property.

{¶ 33} These facts demonstrate that the primary activity on the property in question is not "viticulture." Instead, the primary activities are the processing, bottling, and selling of wine. Thus, these activities are not "secondary to" the production of the agricultural products, i.e., the grapes cultivated for winemaking. Therefore, appellants' activities do not fit into the item of "agriculture" listed in R.C. 519.01.

{¶ 34} Appellants contend that "secondary" has an alternate meaning. They assert that "secondary" can be defined as "not first in order of occurrence or development" and that this meaning is appropriate to apply to the statute, citing, http://www.merriam-webster.com/dictionary/secondary. But if the term "secondary" is interpreted to mean "not first in order of occurrence or development," it would be stripped of its meaning because of the nature of the temporal relationship that it describes. Appellants acknowledge as much in their brief when they state, "To market wine, one first has to have grapes grown for wine and then the wine itself, without which marketing would be a foolhardy endeavor." Therefore, this argument is meritless.

{¶ 35} Finally, appellants assert that reading R.C. 519.01 and 519.21(A) in pari materia manifests the legislature's intent to protect winemaking operations from zoning restrictions. They allege that by reading the statutes together, it becomes clear that "agriculture" includes viticulture *and* selling wine.

{¶ 36} Appellants' argument here relies on R.C. 519.21(A)'s language that allows for buildings used for vinting and selling wine that are located on land "any part of which is used for viticulture." But a close reading of the statute reveals that while the buildings and structures used for vinting are permitted without prohibition from zoning ordinances, these buildings must be *incident to* the agricultural purpose. The statute explicitly states that a zoning commission may not prohibit the use of land for two purposes: (1) agricultural purposes or (2) the construction of buildings or structures *incident to* the use for agricultural

purposes of the land on which the buildings are located. Included in the second purpose are buildings or structures used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture. The statute goes on to state that no zoning certificate is required for any such building.

{¶ 37} In examining the zoning exception set out in R.C. 519.21, the Third District held that "structure-use must be 'directly and immediately' related to agricultural use." *State v. Huffman* (1969), 20 Ohio App.2d 263, 269, 253 N.E.2d 812. Furthermore, "the plain language of the statute [R.C. 519.21(A)] requires the building or structure to be incident to the agricultural purpose. In other words, *the agricultural purpose must be the primary use of the property.*" (Emphasis added.) *Concord Twp. Trustees v. Hazelwood Builders Inc.*, 11th Dist. No. 2004–L–012, 2005-Ohio-1791, 2005 WL 880222, at ¶ 41.

{¶ 38} In this case, as discussed above, the agricultural purpose here was *not* the primary use of the property. Any building or structure used for vinting and selling wine here was not "incident to" the primary purpose of agriculture. Instead, the vinting and selling was the primary purpose. Consequently, appellants do not fall under the zoning exception set out in R.C. 519.21(A).

{¶ 39} Based on the foregoing analysis, appellants' first and third assignments of error are without merit.

{¶ 40} Appellants' second assignment of error states:

{¶ 41} "The trial court erred when it determined that there were no genuine issues of material fact that defendant-appellants' activities operating a winery were not 'agriculture' and that plaintiff appellee was entitled to summary judgment as a matter of law."

{¶ 42} Appellants first argue that the record demonstrates that there are material facts that, when applying the trial court's definition of viticulture, precluded the court from granting appellee's motion for summary judgment.

{¶ 43} Appellants' argument here must fail based on our earlier conclusion that the trial court's definition of "viticulture" was erroneous.

{¶ 44} Appellants next argue that there is no evidence in the record to support the trial court's finding that the marketing or selling of wine is of greater value or importance than the cost incurred for the cultivation of grapes and fruit for the production of wine. They argue that there are no facts in the record demonstrating the respective values of the grapes and plants planted on the property, the value of grapes and juice obtained off-site, or the value of the winery's marketing and selling efforts.

{¶ 45} Appellants are correct that there are no values in the record for the grapes and plants grown on the property, for the grapes and juice obtained from

other sources, or for the winery's marketing and selling efforts. However, the actual values of the grapes and plants grown on the property and the other items are not material facts in this case. The fact remains that no matter what the value of the grapes, juices, marketing, etc., 95 percent of the sales of wine are from grapes and juices not grown or harvested on the property. Consequently, the lack of exact values for the items, which appellants take issue with, does not affect the court's summary-judgment ruling.

{¶ 46} Appellants also make several other arguments concerning Milton Township's zoning resolution. First, they argue that their activities in operation of the winery comply with the "agriculture" use in Section 5(B)(1)(a). Second, they argue that Milton Township did not follow its own zoning resolution and that they relied on the representations made by Milton Township's zoning inspector that they were permitted to open the winery. Finally, they argue that there is no evidence that their activities were in violation of the "Home Occupation" restrictions in the zoning resolution.

{¶ 47} The arguments that appellants now raise were not before the trial court to decide, and therefore, we will not address them here. As noted previously, the parties entered into numerous stipulations in this case. In addition to stipulations of fact, the parties stipulated as to the issues for review. The stipulated issues were (1) whether the winery's activities are an agricultural use of the property as defined by R.C. 519.01 and (2) whether the winery is exempt from zoning regulation pursuant to R.C. 519.21(A). The arguments that appellants now raise do not fall under either of these limited stipulated issues for review. The trial court decided both of the issues before it. We too have reviewed both stipulated issues.

{¶ 48} Accordingly, appellants' second assignment of error is without merit.

{¶ 49} For the reasons stated above, the trial court's judgment is hereby affirmed.

Judgment affirmed.

WAITE, J., concurs.

DEGENARO, J., dissents.

DEGENARO, Judge, dissenting.

{¶ 50} I respectfully dissent from the majority's decision and would reverse the trial court's decision and grant summary judgment in favor of appellants. Appellants' use of their property as a winery falls under the zoning exception set forth in R.C. 519.21(A) and thus is not subject to regulation by appellee.

{¶ 51} As an initial matter, I agree with the majority's conclusion that agriculture includes viticulture, the proper definition of which is "the cultivation or culture of grapes especially for winemaking." Majority opinion at ¶ 25, quoting Merriam–Webster's online dictionary, http://www.merriam-webster.com/ dictionary/viticulture. Appellants' cultivation of 20 grapevines on the property clearly constitutes viticulture.

{¶ 52} I also agree that appellants' additional activities, to wit, making wine from outside grapes and juices, advertising their products, and selling shelf-stable foods, do not constitute "agriculture." As defined by R.C. 519.01, "agriculture includes * * * the processing drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production." Here, the record reveals that appellants' wine-making activities are presently not secondary to their viticultural activities.

{¶ 53} However, I disagree with the majority's conclusion that appellants' winery does not fall under the zoning exception set forth in R.C. 519.21(A).

{¶ 54} R.C. 519.21(A) provides:

{¶ 55} "Except as otherwise provided in division (B) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, *including buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture,* and no zoning certificate shall be required for any such building or structure." (Emphasis added.)

{¶ 56} In statutory interpretation, legislative intent is paramount. *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 39, 741 N.E.2d 121. In order to determine legislative intent, it is a cardinal rule of statutory construction that a court must first examine the language of the statute. *State v. Jordan* (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601. Further, it is well established that a specific statutory provision prevails over a conflicting general provision. *Springdale v. CSX Ry. Corp.* (1994), 68 Ohio St.3d 371, 376, 627 N.E.2d 534, citing *State v. Volpe* (1988), 38 Ohio St.3d 191, 193, 527 N.E.2d 818; see also R.C. 1.51. Here, R.C. 519.21(A) provides a specific zoning exception with regard to buildings and structures used for vinting operations.

{¶ 57} R.C. 519.21(A) precludes township zoning authorities from prohibiting the use of buildings or structures incident to the agricultural use of the land. R.C. 519.21(A) then provides a specific example of buildings or structures that are "incident" to agricultural use, namely, "buildings or structures that are used

primarily for vinting and selling wine and that are located on land any part of which is used for viticulture." In other words, buildings or structures which are used primarily for vinting and selling wine and are located on land any part of which is used for viticulture *are* incident to the agricultural use of the land. A township has no power to regulate such buildings or structures pursuant to R.C. 519.21(A).

{¶ 58} I agree with the position of amici curiae, Ohio Farm Bureau Federation and Mahoning County Farm Bureau, that the language of R.C. 519.21(A) unambiguously reveals a choice by the legislature to prohibit township zoning of the viticulture industry except in limited circumstances. Further, I find persuasive their argument that the legislature's use of vinting operations as a specific statutory example shows its recognition of the reality that all grapes used in vinting operations are rarely produced at the same location where the processing and winemaking occurs. Indeed, there was testimony by appellant Gayle Sperry that cultivation of a single grapevine can take several years. This reality necessitates the use of outside grapes to allow a viticulture and vinting operation to sustain itself in its infancy.

{¶ 59} Based on the plain language of the statute, the R.C. 519.21(A) exception applies to appellants' winery. It is undisputed that appellants use part of the land for viticulture. The property contains 20 grape vines, 12 of which are harvested. The remaining eight are still growing. In addition, the main building on the property is primarily used for vinting and selling wine. In her deposition, Gayle Sperry testified that the wine-making process, including the crushing, destemming, fermenting, aging, bottling and labeling of the wine, takes place inside the main building. Further, all equipment used in this process is stored in the building. Potential buyers are entertained, enjoy wine and shelf-stable foods, and purchase wine in the building as well. And zoning inspector Jenifer Terry concluded that the primary use for the building is vinting, as she testified in her deposition that appellants' operation had "gone way above and beyond a home occupation." Therefore, based on my reading of R.C. 519.21(A), I conclude that appellants' winery falls squarely into the zoning exception. The winery is incident to the agricultural use of the land.

{¶ 60} The majority cites *Concord Twp. Trustees v. Hazelwood Builders, Inc.*, 11th Dist. No. 2004–L–012, 2005-Ohio-1791, 2005 WL 880222, in support of the proposition that in order for a structure to be "incident to" agricultural use, "the agricultural purpose must be the primary use of the property." Id. at ¶ 41. However, *Hazelwood Builders* is factually distinguishable in that it did not involve the specific example provided by the statute, i.e., a structure or building primarily used for vinting and selling wine. Rather, *Hazelwood Builders* con-

cerned animal husbandry, more specifically, the proposed use of a residence for dog breeding.

{¶ 61} In sum, because appellants' winery was incident to the agricultural use, as specified in R.C. 519.21(A), I would hold that appellee had no power to regulate it. Accordingly, I would hold that appellants' third assignment of error is meritorious and would reverse the judgment of the trial court on that basis.